Brian S. Kabateck, State Bar No. 152054
  bsk@kbklawyers.com
Shant A. Karnikian, State Bar No. 285048
  sk@kbklawyers.com
**KABATECK LLP**
633 W. 5th St., Suite 3200
Los Angeles, CA 90071
Phone: (213) 217-5000

John J. Reagan (*pro hac vice* pending)
  reagan@knrlegal.com
Christopher J. Van Blargan (*pro hac vice* pending)
  cvanblargan@knrlegal.com
**KISLING NESTICO & REDICK, LLC**
3412 W. Market Street
Akron, OH 44333
Phone: (330) 729-1090

*Counsel for Plaintiffs and all others similarly situated*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO ROCHA, an individual; and ESTER ROCHA, an individual, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs.<br><br>　　vs.<br><br>AMCO INSURANCE COMPANY, a California entity; NATIONWIDE INSURANCE COMPANY OF AMERICA, a California entity; ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, a California entity; VICTORIA FIRE AND CASUALTY COMPANY, a California entity; CRESTBROOK INSURANCE COMPANY, a California entity; DEPOSITORS INSURANCE COMPANY, a California entity; NATIONWIDE MUTUAL INSURANCE COMPANY, a California entity; and TITAN INDEMNITY COMPANY, a California entity,<br>　　　　　　　Defendants. | **Case No.**<br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiffs, Francisco Rocha and Ester Rocha (hereinafter referred to as "Plaintiffs") by and through counsel, who hereby bring this action on their own behalf and on behalf of the class of individuals defined below, allege the following based on their own personal knowledge pertaining to themselves and on information and belief as to other allegations, as for the their Complaint against Defendants, Amco Insurance Company, Nationwide Insurance Company of America, Allied Property and Casualty Insurance Company, Victoria Fire and Casualty Company, Crestbrook Insurance Company, Depositors Insurance Company, Nationwide Mutual Insurance Company and Titan Indemnity Company, (hereinafter "Defendants", "Nationwide Corp. Group," and/or "Control Group").

## **NATURE OF THE ACTION**

1.    Plaintiffs bring this suit on behalf of themselves and the following Class of persons:

> All of the Defendants' current and former policyholders qualified under California Law to purchase a Good Driver Discount ("GDD") policy who, from January 1, 2009 through the last date Titan and Victoria sold personal auto policies in California ("Class Period"), paid premiums for Defendants' automobile policies containing a GDD (as defined in Cal. Ins. Code § 660), in excess of the lowest rate GDD policy available for that coverage from another insurance company within Defendants' California-Licensed Common Ownership, Management or Control ("Control Group").

Excluded from the Class are:

> (1)    All present and former directors, officers, and management employees of Defendants;
>
> (2)    Any current or former policyholders who filed a lawsuit involving any of the claims asserted herein;
>
> (3)    Employees of Plaintiffs' Class Counsel in the case and their immediate families, any judge assigned to this case and their staff, Defendants' Counsel of record, and their immediate families; and,

CLASS ACTION COMPLAINT

(4)    All persons who make a timely and proper election to be excluded from the Class.

2.    From January 1, 2009 through approximately 2019, when Victoria and Titan stopped selling personal auto liability policies in California ("Class Period"), Plaintiffs paid premiums for Defendants' automobile liability policies (defined in Cal. Ins. Code § 660) for personal automobile liability coverage in California, but did not receive the lowest Good Driver rate available for that coverage from the Defendant insurer that had the lowest Good Driver rate.

3.    California Law requires that insurance companies that write automobile coverage for liability, physical damage collision "or any combination thereof" for defined private passenger vehicles sell GDD policies to the statutory qualified drivers, (Cal. Ins. Code §§ 1861.02 and 1861.025).

4.    The statutorily qualified Good Drivers are entitled to be offered by insurance company agents or representatives and are entitled to purchase the policy with the lowest Good Driver rate for that coverage from any company within the group of insurers having common ownership or operating in California under common management or control, (aka "Control Group")

5.    Defendants are of a common ownership, management or control "Control Group", known as Nationwide Corp. Group.

6.    Defendants, acting together in concert and holding themselves out to be a single entity, through their agents and representatives, all of whom Defendants control, have unlawfully failed to offer and Defendants have failed to sell, GDD policies for their Private Passenger Automobile Insurance policies ("PPA") to Plaintiffs and their other qualified California Good Drivers in the Class, from the Defendant insurer with the lowest Good Driver rates for that coverage.

7.    Cal. Ins. Code § 1861.02(b)(1) requires "every person who meets the criteria of    § 1861.025 shall be qualified to purchase a GDD policy." Cal. Ins. Code §1861.02(b)(2) indicates "the rate charged for a Good Driver Discount policy

3

1  shall comply with subdivision (a) and shall be at least 20% below the rate the

2  insured would otherwise have been charged for the same coverage."

3      8.    Plaintiffs and the Class all held insurance policies issued by one or

4  more of the Defendants.  Plaintiffs, along with all members of the putative class,

5  qualify as "Good Drivers" as defined in Cal. Ins. Code §§ 1861.02 and 1861.025.

6      9.    Plaintiffs do not challenge the premium rates approved by the

7  California Department of Insurance for use by any of the Defendants.  Rather, the

8  subject of this lawsuit is the unlawful, unfair and fraudulent business operations,

9  marketing, management and sales practices of the Defendants as members of the

10  same Control Group.

11      10.    Plaintiffs further allege that Defendants did not comply with California

12  Law by failing to offer, through their agents and representatives, all of whom

13  Defendants control, nor did the Defendant insurers sell, the lowest Good Driver rate

14  PPA that was available from the Defendants in their Control Group, to the Plaintiffs

15  and the Class they propose to represent.

16      11.    Had the Defendant insurers' agents and representatives, all of whom

17  are controlled by Defendants for all issues associated with this Complaint, offered

18  the lowest Good Driver rate PPA that was available from other companies in its

19  Control Group, and had the Defendants sold the lowest Good Driver PPA to the

20  Plaintiffs and the members of the Class, they would have accepted the lower Good

21  Driver rate policies from the other Defendants' insurers.  Plaintiffs and the Class

22  were therefore overcharged by paying premiums which were in excess of the lowest

23  available premium offered by any of the Defendant insurers within the Control

24  Group.

25      12.    Throughout the Class Period, Defendants have unlawfully overcharged

26  Plaintiffs and the Class members for, and wrongfully retained, automobile

27  insurance premiums in violation of Defendants' fiduciary duties, policy contractual

28  obligations and marketing representations, in violation of Cal. Bus. Prof. Code §

4

CLASS ACTION COMPLAINT

1  17200 and in violation of other applicable California Law (Cal. Ins. Code § 660,
2  §1861.02, §1861.025, §1861.15 and §1861.16).

3      13.    Plaintiffs and all members of the Class held insurance policies issued
4  by one or more of Defendants' Control Group companies and paid premium
5  overcharges as a result of Defendants' unlawful acts and misrepresentations.

6      14.    During the Class Period, Defendants were commonly owned or
7  operated under common management, and belong to the Control Group
8  "Nationwide Corp. Group."  Nationwide Corp. Group is identified by the National
9  Association of Insurance Commissioners ("NAIC") as Group #0140.  The
10  Nationwide Corp. Group (Defendants) had common ownership, Nationwide Mutual
11  Insurance Company, ("NMIC") and operated in California under common
12  management or control as set forth in Cal. Ins. Code § 1861.16(b).

13      15.    Plaintiffs and the Class were, at times during the Class Period, legally
14  qualified "Good Drivers" as defined in Cal. Ins. Code §§ 1861.02 and 1861.025.

15      16.    There was actual or apparent agency among Defendants with respect to
16  the marketing of policies, marketing of GDD, and the resulting legal and
17  contractual responsibilities of each Defendant Company on behalf of the other
18  named Defendant Companies.

19      17.    Plaintiffs and the Class were all policyholders of Defendants insurers
20  who were statutorily defined Good Drivers in the State of California during the
21  Class Period.  Plaintiffs and the Class were entitled to the legally required lowest
22  Good Driver rate for a PPA policy offered by the agents and representatives of the
23  Nationwide Corp. Group (Defendants).

24      18.    Defendants, through their agents and representatives, systematically
25  and uniformly failed to provide the lowest Good Driver premium rates to Plaintiffs
26  and the Class, rather overcharging Plaintiffs and the Class and thereby engaging in
27  and continuing to engage in unlawful, unjust, bad faith, fraudulent and/or unfair
28  business practices.

CLASS ACTION COMPLAINT

19.     Defendants, through the actions of their agents and representatives, failed to offer and the Defendant insurers failed to sell, statutorily mandated discounts and Defendants failed to refund Plaintiffs and the Class for premiums wrongfully taken and retained in violation of Defendants' rate filings, policy and contractual obligations, marketing representations and/or applicable California Code.

## JURISDICTION AND VENUE

20.     This action is properly brought in the Central District of the State of California.  This Court has jurisdiction because Defendants' conducted substantial business in the State of California and intentionally availed themselves of the markets and laws of the State.  The Court also has jurisdiction pursuant to Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5 Million, exclusive of interest and costs.

21.     Members of the Class are residents of states different from one or more Defendants.

22.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) as members of the Class are citizens of states different from one or more Defendants.

23.     Venue is proper pursuant to 28 U.S.C. §§ 1391(a) through (c) because Defendants issued the policy contracts, premium billing statements and related forms in this judicial district.  Additionally, Defendants maintain a physical presence in this judicial district, the insurance policies at issue in this litigation were offered and issued in this judicial district and/or Plaintiffs' claims arose in this judicial district.

## PARTIES

24.     Plaintiff, Francisco Rocha is a citizen of the State of California and is a customer of Defendants.  Mr. Rocha resides in Lake Elsinore, California in the County of Riverside.

CLASS ACTION COMPLAINT

1    25.    Plaintiff, Ester Rocha is a citizen of the State of California and is a
2 customer of Defendants.  Mrs. Rocha resides in Lake Elsinore, California in the
3 County of Riverside.

4    26.    Plaintiffs have jointly been loyal customers of Nationwide Corp.
5 Group  (Defendants) and NMIC, for more than ten years.

6    27.    Plaintiffs have purchased automobile insurance from Defendants.
7 Plaintiffs have purchased two PPA policies from Defendant Amco Insurance
8 Company, ("AMCO").  Plaintiffs and the Class they propose to represent, were
9 Good Drivers during the Class Period as defined by Cal. Ins. Code § 1861.02 and
10 §1861.025.

11    28.    Defendant, Amco Insurance Company, (AMCO), NAIC #19100 is an
12 insurance company domiciled in the State of Iowa that, at times during the Class
13 Period, routinely conducted business and maintained a physical presence in the
14 State of California.

15    29.    Defendant, Nationwide Insurance Company of America, (NICOA),
16 NAIC #25453 is an insurance company domiciled in the State of Wisconsin that, at
17 times during the Class Period, routinely conducted business and maintained a
18 physical presence in the State of California.

19    30.    Defendant, Allied Property and Casualty Insurance Company, (Allied),
20 NAIC #42579 is an insurance company domiciled in the State of Iowa that, at times
21 during the Class Period, routinely conducted business and maintained a physical
22 presence in the State of California.

23    31.    Defendant, Victoria Fire and Casualty Company, (VFCC), NAIC
24 #42889 is an insurance company domiciled in the State of Ohio that, at times during
25 the Class Period, routinely conducted business and maintained a physical presence
26 in the State of California.

27    32.    Defendant, Crestbrook Insurance Company, (Crestbrook), NAIC
28 #18961 is an insurance company domiciled in the State of Ohio that, at times during

CLASS ACTION COMPLAINT

the Class Period, routinely conducted business and maintained a physical presence in the State of California.

33.    Defendant, Depositors Insurance Company, (Depositors), NAIC #42587 is an insurance company domiciled in the State of Iowa that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

34.    Defendant, Nationwide Mutual Insurance Company, (NMIC), NAIC #23787 is an insurance company domiciled in the State of Ohio that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

35.    Defendant, Titan Indemnity Company, (Titan), NAIC #13242 is an insurance company domiciled in the State of Texas that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

36.    All Defendants are related and affiliated companies within the same Control Group, Nationwide Corp. Group, NAIC Group #0140.

37.    Defendant VFCC is owned by THI Holdings (Delaware), Inc., ("THI").   THI is owned by Nationwide Mutual Insurance Company.  Except for VFCC, all the Defendants' Rate Filings, are under the same Common Class Plan. However, during the Class Period, VFCC, has filed separate Rate Filings, with the California Department of Insurance ("CDI").

38.    Each of the Defendant companies charge premiums and issued policies to the Class member policyholders for PPA policies that are subject to the California Insurance Code Provisions resulting from the passage of Proposition 103.

39.    Control Group (Defendants) held themselves out as a single entity when marketing their insurance products, offering, through their agents and representatives, including company employee representatives for directly written

8

1    business, a GDD policy for California automobile policyholders.  There was actual

2    and/or apparent agency among the Defendants with respect to the conduct,

3    including, but not limited to, the offering of personal lines Good Driver policies

4    through their agents and representatives, marketing of the policies, marketing of the

5    GDD and the resulting legal and contractual responsibilities of each of the

6    Defendant companies on behalf of the other named Defendant companies.

7         40.    Throughout the Class Period, Defendants issued the same and/or

8    substantially similar personal lines policy forms and coverages, rate filings,

9    including required lower rates for Good Drivers, and marketing representations

10   with respect to Good Driver rates.

11        41.    A common group of representatives, agents and/or employees of the

12   Nationwide Corp. Group (Defendants) directed and committed the wrongful acts

13   alleged here, including over charging Good Driver California policyholders for auto

14   insurance and failing to reimburse Plaintiffs and the Class for those overcharges.

15        42.    The wrongful conduct was perpetrated by each of the Defendants as

16   members of the same Control Group (Nationwide Corp. Group) all acting in the

17   State of California.

18                             **BACKGROUND**

19        43.    Plaintiffs and the members of the Class were, during the Class Period,

20   Good Drivers as defined in Cal. Ins. Code §§ 1861.02 and 1861.025.  Attached

21   herein as **Exhibit A** to this Complaint is a copy of Plaintiffs' Declaration Pages

22   which shows Plaintiffs' Good Driver status.  Plaintiffs and each of the Class

23   members were also a Good Driver policyholder (the policy being defined as in Cal.

24   Ins. Code § 660), and entitled to be offered by Defendants' agents and

25   representatives, and sold Defendants' legally required lowest available Good Driver

26   premium rates from Defendants' Control Group, during the Class Period.

27        44.    Defendants ratified its agents' and representatives' wrongful acts of

28   failing to offer the lowest Good Driver rate for that type of coverage to Plaintiffs

CLASS ACTION COMPLAINT

1   and putative class members.  Defendants failed to sell the lowest GDD policy to

2   Plaintiffs and Class members from an insurer within the common ownership,

3   management or control group, which offers the lowest rates for that coverage.

4                    **DEFENDANTS' WRONGFUL PRACTICES**

5       45.    California Law requires that insurance companies, writing automobile

6   coverage for liability, physical damage, collision or any combination thereof, for

7   defined private passenger vehicles, offer, through their agents or representatives, a

8   GDD to qualified drivers.  (Cal. Ins. Code §§ 1861.02 and 1861.025).  The statutory

9   language reads in part:

10          Cal. Ins. Code § 1861.02

11                              *         *         *

12          Every person who meets the criteria of § 1861.025 shall
            be qualified to purchase a Good Driver Discount policy
13          from the insurer of his or her choice.  An insurer shall not
            refuse to offer and sell a Good Driver Discount policy to
14          any person who meets the standards of this subdivision."
            Cal. Ins. Code § 1861.02(b)(1).  "The rate charged for a
15          Good Driver Discount policy shall comply with
16          subdivision (a) and shall be at least 20% below the rate
            the insured would otherwise have been charged for the
17          same coverage.  Rates for Good Driver Discount policies
            shall be approved pursuant to this article.
18

19

20      46.    The requirements in Cal Ins. Code §§1861.02, 1861.025, and 1861.16

21   are mandatory regardless of the coverage offered.  Such drivers are entitled to

22   purchase the policy with the lowest Good Driver rate for that type of coverage from

23   the Control Group of insurance companies with the lowest rate.

24      47.    California Law requires an agent or representative of an insurer within

25   a Control Group to offer a qualified Good Driver the policy with the lowest rates for

26   that coverage offered by any of the insurers within the Control Group.  This is

27

28

CLASS ACTION COMPLAINT

1    referred to as the "Cross-Company" offer requirement of Cal. Ins. Code §

2    1861.16(b).  Cal. Ins. Code § 1861.16(b) provides in relevant part as follows:

3

4            An agent or representative representing one or more
             insurers having common ownership or operating in
5            California under common management or control shall
             offer, and the insurer shall sell, a Good Driver Discount
6            policy to a Good Driver from an insurer within that
             common ownership, management or control group,
7            which offers the lowest rates for that coverage.  This
             requirement applies notwithstanding the underwriting
8            guidelines of any of those insurers or the underwriting
9            guidelines of the common ownership, management, or
             control group.
10

11

12        As all Defendant companies had, during the Class Period, common

13   ownership, management or control, their Agents or representatives were required to

14   offer, and the Defendant insurers weree required to sell, a Good Driver Discount

15   policy to a Good Driver, from the Defendant insurer with the lowest Good Driver

16   rate.

17        48.    Cal. Ins. Code § 1861.16(b) provides a limited exception to the Cross-

18   Company offer requirement for insurers with common ownership, management or

19   control.  To receive the exception, all insurers in the Control Group, must meet all

20   of the strict criteria establishing genuine and complete company independence

21   ("Separation Requirement"), from the other affiliated insurers in the Control Group.

22   This exception to the Cross Company offer requirement is known as the ("Super

23   Group Exemption").  The exception is detailed in Cal. Ins. Code §1861.16(c)(1).  It

24   reads in relevant part:

25

26           Notwithstanding subdivision (b), insurers having common ownership
             and operating in California under common control are not required to
27           sell Good Driver Discount policies issued by other insurers within the

28

                                          11

common ownership group if the commissioner determines that the insurer satisfies each of the following conditions:

(A)    The business operations of the insurers are independently managed and directed;

(B)    The insurers do not jointly develop loss or expense statistics or other data used in rate making, or in the preparation of rating systems or rate filing;

(C)    The insurers do not jointly maintain or share loss or expense statistics, or other data used in rate making or in the preparation of rating systems or rate filings.  This condition shall not apply if the data is generally available to the industry through a non-affiliated third party and is obtained from that third party;

(D)    The insurers do not utilize each other's marketing sales, or underwriting data;

(E)    The insurers act independently of each other in determining, filing, and applying base rates, factors, class plans, and underwriting rules, and in the making of insurance policy forms;

(F)    The insurers' sales operations are separate;

(G)    The insurers' marketing operations are separate; and,

(H)    The insurers' policy service operations are separate.

Cal. Ins. Code § 1861.16(c)(1)

49.    The limited Super Group Exemption, exempts insurers that are under common ownership, management or control, from the Cross Company offer requirement.   However, all eight of the exemption criteria must be strictly adhered to at all times, to permit the Control Groups' insurers, to operate with the Super Group Exemption.  This current version of Cal Ins. Code §1861.16(c)(1)[A-H], became the law on January 1, 2005.

50.    All of the aforementioned exception criteria outlined in Cal. Ins. Code §1861.16(c)(1)[A-H] must be strictly met at all times.  Otherwise, the Defendants' agents and representatives must Cross-Company offer and the Defendants must sell, to statutorily defined Good Drivers, the PPA policy from the Nationwide Corp. Group, with the lowest Good Driver Discounted rate.

CLASS ACTION COMPLAINT

51.     However, the Defendants, during the Class Period did not comply with eight criteria enumerated in §1861.16(c)(1)[A-H], and therefore, Defendants were not entitled to the Super Group Exemption.  Among other things, as evidenced in the sworn affidavit of former Nationwide "commercial auto product manager" Harold Rummel (attached hereto as **Exhibit B**), Defendants conducted joint marketing meetings and assisted each other in developing marketing and sales channels including the sharing of agent lists and set-up of agent introduction for the benefit of NMIC as a whole rather than the benefit of the individual company providing assistance to its affiliate company.  [**Exhibit B:** Affidavit of Harold Rummel.]  This coordination regularly occurred between Allied, Titan, and Victoria in California. [**Exhibit B:** Affidavit of Harold Rummel.].  Accordingly, Defendants' agents and representatives, were required to abide by the Cross-Company offer requirement, and thus must offer the lowest GDD policy and the Defendants were required to sell the lowest GDD policy which offered the lowest Good Driver rate "for that coverage" from all the Defendants' insurers, to the Plaintiffs and the Class they purported to represent.

52.     "For that coverage" is a term that refers to the same *general policy* type of coverage for the three types of coverage listed (liability, physical damage and collision) in Cal. Ins. Code §§ 660(a)-(d).  Cal. Ins. Code §660 is referenced in §1861.16(a) pertaining to the definition of a "policy" and thus relates to the same or substantially similar coverage for the same general policy type.

53.     As a result of the Defendants' agents and representatives failing to offer the lowest Good Driver rate for the coverages, and as a result of the Defendants failing to sell the lowest Good Driver rate to the Plaintiffs and the Class members, the Defendants, all within the same Control Group, charged excessive premiums and continue to unlawfully retain the excessive premiums paid.

54.     Although the Plaintiffs and the Class members they seek to represent, were all Defendants' insureds, that were qualified for, and entitled to receive, the

13

1    lowest Good Driver rate for that coverage, the contractually and legally required

2    lowest premium rate was not given to Plaintiffs or the members of the Class.  The

3    charged policy premium amounts for personal lines automobile coverages were in

4    excess of Defendants' approved policy premiums contained in their regulatory rate

5    filings and/or in violation and breach of the expressed and/or implied marketing

6    representations of Defendants.

7        55.    Defendants did not satisfy all of the eight conditions enumerated in

8    Cal. Ins. Code § 1861.16(c)(1)[A-H].  Therefore, Defendants did not qualify for the

9    Super Group Exemption.  Absent the exemption, agents and representatives for the

10   Defendants must Cross Company offer and the Defendants were required to sell to

11   the Plaintiff and the Class Members the lowest Good Driver rate available among

12   all Defendant insurers.  The company with the lowest Good Driver rate is from

13   VFCC.  A PPA policy of insurance from VFCC, was not offered to the Plaintiffs or

14   Class Members, by the Agents and Representatives of the Defendants.  Had it been

15   offered, Plaintiffs and the Class Members would have accepted the offer and

16   purchased a PPA policy of insurance from VFCC.

17       56.    During the Class Period, Defendants filed "Exhibit 19s" with the

18   California Department of Insurance, (CDI) for each of the Defendant companies in

19   the Nationwide Corp. Group.  In doing so, Defendants declared, under oath, that

20   they were, and would continue operating each individual Defendant insurer,

21   completely separate and independent, ("Separation Requirement").  The Separation

22   Requirement, (as set forth in §1861.16(c)), was an on-going duty that the

23   Defendants were required to maintain at all times in order to satisfy the Super

24   Group Exemption from the Cross Company offer requirement.  Failing to meet any

25   of the eight requirements listed in Cal. Ins. Code §1861.16(c)[A-H] would

26   immediately result in the removal of the Defendants' Super Group Exemption.

27       57.    Exhibit 19 is a form that must be included in a filing by an insurance

28   company to assert such facts as the insurer represents will qualify the insurer for the

14

1    Super Group Exemption from the restrictions of Cal. Ins. Code §1861.16, that are

2    placed upon an insurer that operates within a Control Group.  However, the filing of

3    an Exhibit 19 is not a certification that an insurer qualifies for the Super Group

4    Exemption, rather it is merely an assertion and declaration under oath by the

5    insurer.  Truthfulness in the Exhibit 19 and compliance with Cal. Ins. Code

6    §1861.16 are duties imposed by law upon the insurer submitting an Exhibit 19.

7    Defendant insurers had a duty to strictly maintain at any time and at all times, the

8    eight enumerated criteria in §1861.16(c)(1) for purposes of receiving and

9    maintaining a Super Group Exemption, from the Cross-Company offer requirement.

10    58.    Filing an Exhibit 19 and/or the approval of a rate filing that includes

11    an Exhibit 19, does not grant an insurer a Super Group Exemption, or release an

12    insurer from their statutory obligation to comply with §1861.16(b).  That exemption

13    is only earned through continuous compliance with § 1861.16(c)(1).

14    59.    The Defendants declared, during the Class Period, that they satisfied

15    and would continue to satisfy each of the eight criteria outlined in Cal. Ins. Code

16    §1861.16(c)(1), presumably entitling the Defendants to the Super Group

17    Exemption. However, the Defendants failed to comply with several of the

18    Separation Requirements enumerated in §1861.16(c)(1).  As evidenced in the sworn

19    affidavit of former Nationwide "commercial auto product manager" Harold

20    Rummel (attached hereto as **Exhibit B**), during the Class Period, Defendants failed

21    and continue to fail to meet the strict Separation Requirements of

22    §1861.16(c)(1)(A),(F),(G) and (H).

23    60.    Accordingly, Defendants' agents and representatives, all of whom

24    Defendants controlled for purposes of this Complaint, were and are legally

25    obligated to offer and the Defendants were legally obligated to sell the policies with

26    the lowest available Good Driver rates from any of the insurers in the Nationwide

27    Corp. Group, as set forth in §1861.16(b).  In failing to do so, Defendants unlawfully

28

CLASS ACTION COMPLAINT

1  offered, charged and retained, excessive premiums from Plaintiffs and members of

2  the Class.

3      61.    Plaintiffs and the members of the Class paid insurance premiums for

4  automobile insurance which Defendants' overcharged.  Had the Defendants' agents

5  and representatives offered the lowest Good Driver rate available from the

6  Defendants' companies, and had the Defendants' sold the Plaintiffs the policies

7  with the lowest Good Driver rate, the Plaintiffs and the Class Members would have

8  accepted the lower Good Driver rate from the Defendants.

9      62.    Defendants did not inform the overcharged Plaintiffs and members of

10  the Class of their right to be reimbursed for their premium overpayments and did

11  not make the required reimbursement when overcharges were discovered.  Rather,

12  the Defendants maintained substantially uniform and systematic policies,

13  procedures and practices designed to conceal this wrongful conduct from the

14  Plaintiffs and the Class.

15      63.    Defendants have denied to Plaintiff and the CDI that they violated the

16  eight separation requirements of the Supergroup exemption, have refused to turn

17  over and/or disclose documents demonstrating violation of the separation

18  requirements, and concealed information contained in those documents showing

19  Defendants' violations both in response to Plaintiffs' inquiries and the CDI's

20  investigation of Plaintiffs' Request for Assistance. Such concealment is evidenced

21  by newly acquired evidence including but not limited to the Affidavit of Harold

22  Rummel (**Exhibit B**). Because of the Defendants' act of concealment and ongoing

23  fraudulent actions, Plaintiffs and the Class were not reasonably able to discover the

24  Defendants' wrongful conduct and/or premium overcharges.

25      64    With regard to Plaintiffs, Francisco Rocha and Ester Rocha, they were

26  sold a policy by Defendant, AMCO, which is a company owned by NMIC and

27  controlled by Control Group, Nationwide Corp. Group.  The policy of insurance

28  was offered by Schoolsfirst Insurance Services, an independent agent for the

Defendants.  The offer from Defendants' agent was for Defendant AMCO to sell a
Good Driver discounted PPA policy to the Plaintiffs. As a result of the offer,
Plaintiffs accepted it and Defendants sold the policy to the Plaintiffs.

65.    At no time during the Class Period, did Defendants' agents or
representatives, offer a PPA policy from Defendant VFCC.  Had a policy of
insurance been offered by the Defendants' agents or representatives and sold by the
Defendants, the Plaintiffs would have accepted the policy from VFCC, which did
contain a lower Good Driver rate.

66.    The policy of insurance offered by Defendants' agent and sold by
Defendants contained a GDD under the General Policy Information as indicated on
Page 1 of **Exhibit A** attached herein.

67.    Page 3 of **Exhibit A** identifies the Defendants' agent- It reads in part:
"How to contact us…Your Allied agent--- SCHOOLSFIRST INSURANCE
SERVICES."

68.    Page 3 of **Exhibit A** identifies the Defendant insurance company for
which the agent offered the policy.  It reads in part: "Issued By: Amco Insurance
Company, … By: Schoolsfirst Ins. Services."

69.    Page 3 of **Exhibit A** provides the "Premium Summary."  The "Total
Policy Premium" covering the six-month policy period is indicated as $923.62.  At
the same time, for the same policy period and for the same or substantially similar
coverages for the identical vehicles, Defendant VFCC had policies available which
also contained a Good Driver rate that should have been offered by Defendants'
agents or representatives and sold by Defendants to Plaintiffs, which would have
included a "Total Policy Premium" of $817.75.  The Defendants' Agents and
Representatives were required to offer and Defendants were required to sell to
Plaintiffs Francisco Rocha and Ester Rocha, a policy of insurance from VFCC for
$105.87 less than what they were charged and paid for the same six-month period
from the AMCO policy.

CLASS ACTION COMPLAINT

70.    At all times herein, Schoolsfirst Insurance Services was acting as an agent and representative in its capacity on behalf of Defendant, AMCO and Defendants' Control Group (Nationwide Corp. Group).  When the agent fraudulently failed to offer to the Plaintiffs, the lowest Good Driver rate from the Defendants' insurers, the Defendants' ratified the agent's actions.

71.    Schoolsfirst Insurance Services did not offer to sell and the Defendants did not sell to the Plaintiffs, a policy of insurance from the Defendant insurer that contained the lowest Good Driver rate, which would be from Victoria Fire and Casualty Company, (VFCC).

72.    As Defendants' Control Group does not qualify for the Super Group Exemption, Defendants' agents and representatives were required to Cross Company offer and the Defendants were required to sell a PPA from VFCC as it had the lowest Good Driver rate from the Defendant companies that are under the common ownership and control of NMIC and the Control Group.

73.    The Plaintiffs would have accepted the lower Good Driver rate policy had the Plaintiffs been offered it from the Defendants' Agents or Representatives and had the Defendants' Control Group sold it to the Plaintiffs.

74.    At all times, during the Class Period, the Defendants', their Control Group (Nationwide Corp. Group), and owner (NMIC) were not entitled to a Super Group Exemption of the Cross-Company Offer requirement as outlined in Cal. Ins. Code § 1861.16(c).  Therefore, the Plaintiffs and the members of the Class expected that Defendants, through their agents and representatives, would offer and Defendants would sell, policies with the lowest available Good Driver rate "for that coverage" as defined in Cal. Ins. Code §660.

75.    Throughout the Class Period, Defendants engaged in the course of conduct designed to conceal and or avoid the contractual, legal and equitable obligations to policyholders who have been wrongfully denied the lowest Good Driver rates for the coverages they were sold.  Defendants did not inform

policyholders who had been overcharged of their right to be reimbursed for their premium overpayments, and did not offer to or make the required reimbursement.

76.    The Control Group (Defendants) maintained substantial uniform and systematic policies, procedures and practices designed to conceal this wrongful conduct from Plaintiffs and the Class.

77.    By violating their contractual, legal and equitable obligations, Defendants acted unreasonably, in bad faith, and in violation of their special fiduciary duties including the implied covenant of Good Faith and Fair Dealing and thereby significantly increased their profits at the expense of their policyholders.

## **CLASS ALLEGATIONS**

78.    This action is properly brought as a Class Action seeking certification pursuant to Fed. R. Civ. P. 23(B)(2) and Rule 23(B)(3) for the reasons that this action satisfies the numerosity, commonality, typicality, and adequacy requirements.

The class is a Rule 23(B)(2) class and a Rule 23(B)(3) class defined as follows:

> ALL PERSONS OR ENTITIES IN THE STATE OF CALIFORNIA WHO WERE (1) INSURED BY ANY OF THE DEFENDANTS FOR MOTOR VEHICLE COVERAGE ANYTIME FROM JANUARY 1, 2009 THROUGH THE LAST DATE TITAN AND VICTORIA SOLD PERSONAL AUTO POLICIES IN CALIFORNIA AND (2) WERE STATUTORILY DEFINED GOOD DRIVERS PURSUANT TO CAL. INS. CODE §660 AND (3) DID NOT RECEIVE THE LOWEST GOOD DRIVER RATE FROM THE DEFENDANT THAT HAD THE LOWEST GOOD DRIVER DISCOUNT POLICY FOR THAT PERIOD.

79.    **Numerosity.** The Class is numerous such that joinder of all Class Members is impractical.  Plaintiffs do not know the exact number and identity of Class Members; however, the Class may contain thousands of Members.

CLASS ACTION COMPLAINT

1  Attempting to join and name each Class Member would be unreasonable and

2  impracticable.

3      80.  **Commonality.** Common questions of law and fact exist as to all

4  Members of the Class and predominate over questions affecting only individual

5  Class Members.  The common, legal and factual questions include, but are not

6  limited to the following:

7      (a)  Whether agents and representatives of Defendants Control Group

8           failed to offer and Defendants Control Group failed to sell, Plaintiffs

9           and the Members of the Class, the California PPA with the lowest

10          Good Driver rate available among Defendants' Common Ownership,

11          Management or Control Group as contained in Defendants' rate

12          filings;

13     (b)  Whether Defendants' failure to reimburse Plaintiffs in the Class for the

14          alleged overcharged premiums is a contractual breach and/or a

15          violation of Cal. Ins. Code § 483;

16     (c)  Whether Defendants were required to inform Plaintiffs and the Class

17          who were good drivers, as statutorily defined, of the premium

18          overcharges;

19     (d)  Whether Defendants' failure to inform and reimburse Plaintiffs and the

20          Class was a violation of their special fiduciary responsibilities

21          including the implied covenant of good faith and fair dealings;

22     (e)  Whether Plaintiffs and the Class are entitled to restitution,

23          disgorgement, and other appropriate equitable relief;

24     (f)  Whether Defendants have failed to disclose material facts the Plaintiffs

25          and the Class, through misrepresentation and/or concealment about the

26          policies available in their Control Group with the lowest available

27          Good Driver rates and their lowest available personal auto premium

28          charges/overcharges;

CLASS ACTION COMPLAINT

(g)    Whether Defendants have engaged in an actionable course of conduct designed to avoid and/or conceal their contractual and legal obligations to Plaintiffs and the Class, including an obligation to reimburse the Plaintiffs and the Class Members for the overcharges;

(h)    Whether Defendants have engaged in acts of unfair competition through either an Unlawful Business Practice, an Unfair Business Practice, or a Fraudulent Business Practice;

(i)    Whether the Plaintiffs and the Class have sustained damages and the proper measure of those damages;

(j)    Whether the Plaintiff and the Class are entitled to an award of Punitive Damages against Defendants; and,

(k)    Whether the Plaintiffs and the Class are entitled to recover their costs, Attorneys' Fees and Prejudgment Interest.

81.    **Adequacy.** The Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs have no interests that are antagonistic to those of the Class. Plaintiffs have the ability to assist and adequately protect the rights and interests of the Class during litigation. Further, Plaintiffs are represented by Counsel who are competent and experienced in this type of Class Action Litigation.

82.    The claims of the representative Plaintiffs are typical of the claims of the Class. There are no conflicts of interest between the Plaintiffs and the Class. A Class Action is an appropriate method for the effective adjudication of the controversy because there is no benefit to Class Members individually controlling the prosecution of separate actions. Furthermore, damages sustained by individual Class Members are relatively small and the expense and burden of individual litigation makes it impossible for the Class Members individually to redress the wrongs done to them. When liability is determined, the claims of all Class Members can be determined through routine mathematical calculations and thus, can be determined by the Court and administered efficiently in a manner that is far

21

1  less erroneous, burdensome and expensive than if it were attempted through filing,

2  discovery and Trial of many individual cases.  This Class Action will promote the

3  orderly, efficient, and expeditious and appropriate adjudication and administration

4  of Class Claims to promote economies of time and resources.  This Class Action

5  will assure uniformity of decision among Class Members.  The resolution of this

6  controversy, through this Class Action, presents fewer management difficulties than

7  individual claims filed in which the parties may be subject to varying adjudication

8  of their rights.

9      83.    Common liability exists between Defendants and all the Members of

10  the Class.  Thus, a Trial of the Plaintiffs' claims will decide liability issues for all

11  the Members of the defined Class.

12      84.    Furthermore, Class treatment is appropriate because Defendants have

13  acted on grounds generally applicable to the Class, making Class-wide equitable,

14  injunctive, declaratory and monetary relief appropriate.  In addition, the prosecution

15  of separate actions by or against individual Members of the Class would create a

16  risk of incompatible standards of conduct for Defendants and inconsistent or

17  varying adjudications for all parties.

18              **TOLLING AS A RESULT OF ONGOING CONCEALMENT**

19      85.    Defendants knew and concealed from Plaintiffs, the Class, and the CDI

20  that Defendants' agents and representatives, all of whom Defendants controlled

21  with respect to the matters alleged in this Complaint, were not providing the

22  required Cross-Company offer for all companies in Defendants' Control Group and

23  that Defendants were overcharging premiums to the Plaintiffs and the Class.

24      86.    Defendants' agents and representatives failed to offer and Defendants

25  failed to sell, the policies from their Control Group with the lowest Good Driver

26  rates that were legally required under applicable law, and/or contained in

27  Defendants' Control Group regulatory filings.

28

CLASS ACTION COMPLAINT

87.    Defendants' officers, management and other employees, knew since 2009, that they were violating the assertions and declarations made in their Exhibit 19 filing, wherein they declared under oath, that they were entitled to a Super Group Exemption, and thus, not required to Cross-Company Offer the policy with the lowest Good Driver rate from the various Defendants' within the Control Group.

88.    For years, their concealed non-compliance with California Law continued.  In or around November 2017, Plaintiffs suspected they had been overcharged for their insurance coverage because Defendants had not been entitled to the Super Group Exemption since 2009 and at all times during the Class Period. Accordingly, the Defendants' agents and representatives were required to Cross-Company offer the lowest Good Driver rate from the Control Group and the Defendants were required to sell the lowest Good Driver rates to the Plaintiff and Class Members from on or around January 1, 2009 until Victoria and Titan stopped insuring California drivers under personal auto liability policies in approximately 2019.

89.    It was discovered that the Defendants' Exhibit 19's contained false direct and indirect representations of material fact.  The Defendants claimed:

(i)    The business operations of the insurers are independently managed and directed; [§1861.16(c)(1)(A)]

(ii)    The insurers' sales operations are separate; [§1861.16(c)(1)(F)]

(iii)    The insurers' marketing operations are separate; [§1861.16(c)(1)(G)] and,

(iv)    The insurers' policy service operations are separate. [§1861.16(c)(1)(H)]

90.    Because of Defendants' act of concealment and ongoing fraudulent actions as hereinafter explained, the Plaintiffs and the Class were not reasonably

able to discover Defendants' wrongful conduct and/or the premium overcharges for the reasons more fully set forth in Count IV (Fraud) in this representation.

91.    Defendants had, during all relevant times throughout the Class Period, a special fiduciary and contractual duty to Plaintiffs and the Class to disclose the improper premium charges and refund the overcharges.

92.    As a result of Defendants' misrepresentations and fraudulent concealment, the Defendants are equitably estopped from asserting a statute of limitations defense.

## COUNT I
## BREACH OF CONTRACT

93.    Plaintiffs reallege the allegations contained in the Paragraphs above as if fully set forth herein.

94.    Defendants entered into a Standard-Form Private Passenger Personal Lines Automobile Insurance Contract with the Plaintiffs and the Class Members they seek to represent.  The policies of insurance are defined in Cal. Inc. Code § 660.  These are binding contracts under which the rates were to be accurately charged in accordance with Defendants fixed rate plans and applicable California Law.

95.    The premiums due for insurance coverage under these policies were to be determined by applicable contractual understanding and/or regulatory filings including qualified Good Driver rates pursuant to Cal. Inc. Code §§ 1861.02 and 1861.025.

96.    Plaintiffs and the Class reasonably expected that Defendants would comply with California Law and regulations by offering, through their agents and representatives, and selling policies with the lowest Good Driver rates available in Defendants' Control Group for each Class Member policyholder eligible for the discount.

CLASS ACTION COMPLAINT

97.    Plaintiffs were charged a "Total Policy Premium" of $923.62 as offered by Defendants' agent, Schoolsfirst Insurance Services and sold by Defendant AMCO.  The policy period was May 4, 2016 through November 4, 2016, bearing policy number PPA 0026619177-3, as noted on Page 3 of **Exhibit A** attached herein.

98.    At this same time, for the same policy period and for the same or substantially similar coverages, Defendant VFCC had a policy available that should have been offered by Defendants' agents and representatives and sold by Defendants to Plaintiffs for a "Total Policy Premium" of $817.75.  Defendant Control Group Companies' agents and representatives were required to offer and Defendants were required to sell, to the Plaintiffs a policy from VFCC for $105.87 less for the six-month policy period than they were charged and paid.

99.    Each policy holder in the Class was also overcharged for their premiums shown on their policy Declarations Pages, which stated premium amounts non-compliant with Cal. Ins. Code §§ 1861.02 and 1861.025, as they were charged higher than the lowest Good Driver rates available from the companies within Defendants' Control Group.

100.    Plaintiffs and the Class were issued the above described PPA policies by Defendants, which required the payment of premiums that were billed by Defendants and were required to be paid in order to obtain or maintain the coverage promised in the policy contracts.

101.    Each of the Class Members was a Good Driver policyholder as defined in Cal. Ins. Code §§ 1861.02 and 1861.025 and entitled to be offered and sold Defendants' advertised, filed and legally required lowest available Good Driver premium rates from the Control Group Defendant Companies at clearly ascertainable times during the Class Period.

102.    Defendants' breached their policy contracts with Plaintiffs and the Class by their agents and representatives' failure to offer and Defendants

CLASS ACTION COMPLAINT

1    Companies' failure to sell, the lowest Good Driver rate from the Defendant

2    company that had the lowest available Good Driver rate in the Control Group.

3        103.    Compliance with the Law in the business of insurance is a matter

4    recognized by the California Legislature in enacting the Private Enforcement

5    Authorization found in Cal. Ins. Code § 1861.03(a).  A contractual provision

6    regarding legality is also recognized by the Defendant companies as indicated in the

7    Defendants' Standard Form Agreements issued to Plaintiffs and the Class.  A

8    certified copy of Plaintiffs' policy has not been provided and currently not in the

9    possession of the Plaintiffs, rather, the policies are in the possession of the

10    Defendants.

11        104.    California Vehicle Code ("CVC") §16058 provides that all California

12    PPA insurance policies containing liability coverage are subject to mandatory

13    electronic reporting, a type of legally required certification by insurance companies

14    of "Financial Responsibility" pertaining to their insureds.  As such, the California

15    PPA policies issued to Plaintiffs and the Class are uniformly required by their

16    expressed terms to "comply with the law to the extent required."  This contractual

17    promise to "comply with the law" drafted by Defendants and included in their

18    policies, was breached when the Defendant Control Group Companies violated the

19    provisions of Cal. Ins. Code §1861 as set forth above.

20        105.    All conditions precedent have been performed by Plaintiffs and the

21    Class.

22        106.    Defendants materially breached the contractual terms in their

23    advertised and marketed Good Driver rates as well as their advertised and marketed

24    promise, offered to Plaintiffs and the Class; rates that were presumed in law to be

25    legally compliant with the California Insurance Code requirement that the lowest

26    Good Driver rate policy for that coverage be offered by Defendants' agents and

27    representatives and sold by the Companies in the Control Group.

28

CLASS ACTION COMPLAINT

107.    Plaintiffs and the Members of the Class would have accepted the lower premiums and purchased the lower premium Good Driver rate policies with the same or substantially similar coverage had it been offered, as legally required.

108.    As a result of Defendants' material breaches of these contracts, Plaintiffs and the Members of the Class are entitled to an award of damages. Alternatively, Plaintiffs and the Members of the Class are entitled to specific performance in the form of reimbursement for the overpayments.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

109.    Plaintiffs reallege the allegations contained in the Paragraphs above as if fully set forth herein.

110.    Defendants entered into Standard-Form Private Passenger Automobile Insurance Contracts with Plaintiffs and the Class Members, thereby creating an insurer-insured special fiduciary relationship between Defendants, Plaintiffs and each Class Member.

111.    Defendants therefore owed a heightened duty under the law to treat each policy holder with good faith and fair dealing, including duties to:

(a)    Accurately determine and offer, through their agents and representatives within the meaning of Cal. Ins. Code § 1861.16(b), all of whom Defendants controlled for all matters alleged herein, their lowest available filed and approved premium rates for good drivers from the California License Company within Defendants' Control Group;

(b)    Accurately calculate and charge premiums due from Good Driver policy holders for the lowest available Good Driver rates offered by Defendants' California- Licensed Companies within Defendants' Control Group;

CLASS ACTION COMPLAINT

(c)    Fully and promptly disclose any inaccuracies and overcharges at the time they were discovered;

(d)    Promptly resolve any premium overcharges that were inconsistent with Defendants' expressed and/or implied representations made and/or filed rate plans;

(e)    Promptly reimburse policyholders for overcharges; and,

(f)    Otherwise comply with governing law.

113.    Defendants acted unreasonably, without proper cause and unlawfully in relationship to the Plaintiffs and Class Members, including by:

(a)    The failure of Defendants' agents and representatives to offer policies with lowest Good Driver rates and premiums in compliance with their contractual obligations, advertised representations, and/or rate filings made by Defendants' California Licensed Companies within Defendants' Control Group;

(b)    Overcharging the Class by not selling the policy with the lowest Good Driver rate for the coverages available from the Defendant Companies in their Control Group, failing to disclose the overcharges and withholding payment without proper cause;

(c)    Failing to disclose and/or actively concealing material information concerning the rates charged to Plaintiffs and the Class; and/or,

(d)    Breaching their duties to Plaintiffs and the Class members.

112.    Defendants' bad faith, unfair and deceptive conduct violated the implied covenant of good faith and fair dealing.

113.    Defendants knew their lack of disclosure, concealment of their conduct and failure to reimburse premiums to Plaintiffs and the Class was unreasonable and without justification, and/or Defendants deliberately acted in reckless disregard of Plaintiffs' and Class Members' rights and in a manner that they knew would cause them financial harm.

28

114.    Defendants' bad faith, unfair, deceptive and unlawful conduct has harmed the Plaintiffs and the Members of the Class.  Plaintiffs and the Class are therefore entitled to damages under the law in an amount to be established at Trial.

115.    Defendants' bad faith, unfair, deceptive and unlawful conduct was knowing, deliberate, wanton, willful, outrageous, malicious, and undertaking the conscious disregard of and with reckless indifference to, the Plaintiffs' and the Class Members' interests and otherwise of a character warranting the imposition of Punitive Damages.

<u>COUNT III</u>
<u>FRAUD AND MISREPRESENTATION</u>

116.    Plaintiffs reallege the allegations contained in the Paragraphs above as if fully set forth herein.

117.    Defendants were each authorized and licensed to write PPA insurance policies in California since prior to the commencement of the January 1, 2009 Class Period.  Defendants AMCO, NICOA, Allied, VFCC, Crestbrook, Depositors, and NMIC are members of the same Control Group of insurance companies, (Nationwide Corp. Group) and same ownership, NMIC.

118.    Throughout the Class Period, VFCC has filed separate and different Rate Filings from the remaining Defendants.  During this time, the remaining Defendants filed the same Rate Filing (Common Class Plan).

119.    The separate and different Rate Filing of VFCC, results in a lower Good Driver rate than the Good Driver Discounted rates of the remaining Defendants, for the Plaintiffs, for the same or substantially similar coverage, during the same policy period and for the same vehicles.

120.    However, as the Defendant Companies' agents and representatives failed to Cross Company offer, and the Defendants failed to sell the PPA policy with the lowest Good Driver rate to the Plaintiffs, the Plaintiffs were overcharged $105.87 for the six-month policy period.

121.    During the Class Period, AMCO and the other Defendants, despite having the same common ownership (NMIC), management or control, (Nationwide Corp. Group), claimed by virtue of their filing of Exhibit 19's with the CDI, that their agents, representatives and Defendants, had a Super Group Exemption, from the Cross Company offer requirement.

122.    However, the facts reveal that during the Class Period, NMIC, the owner of Defendant insurers, and THI Holdings (Delaware), Inc. ("THI"), began an illegal service plan for THI, the Holding Company for VFCC.  NMIC began providing in-depth, business, marketing and sales services for THI (VFCC), in direct contravention of the Separation Requirements, which must be strictly adhered to, pursuant to §1861.16(c)(1).  Thus, the Defendants, began violating their own declarations of their previously filed Exhibit 19's with the CDI.  The Defendant Control Group of companies, no longer had complete and genuine independence from each other, and in fact often acted to facilitate sales by other affiliate companies to the benefit of NMIC as a whole rather than the individual company, which is a fraudulent, actionable and material misrepresentation, to the CDI.

123.    The service plan that NMIC undertook for THI (VFCC) began in 2009 and continued throughout the Class Period.  In 2009, NMIC began providing in-depth marketing service, customer insights and analytics, financial analysis and other business activities for THI (VFCC).  Defendants purposefully concealed their shared and combined business plan, from the CDI, Plaintiffs and the Class.

124.    The CDI, Plaintiffs and the Class were never informed and never became aware of, the fact that the Defendants, had begun a business model that violated the Separation Requirements, detailed in Cal. Ins. Code §1861.16(c)(1). These services were in direct violation of their Exhibit 19 filings with the CDI and immediately removed their purported Super Group Exemption status, requiring the Defendants to Cross Company offer the lowest Good Driver rate, among all affiliated Defendant companies.

CLASS ACTION COMPLAINT

1    125.   NMIC's services for THI (VFCC), also included the illegal

2    consultation and lead development and execution of the creative, tactical plan and

3    brand work for VFCC's strategy.  In 2009 and throughout the Class Period, NMIC

4    also managed and budgeted various marketing initiatives and performed other

5    marketing related tasks, along with managing external agencies, all of which

6    violated the Separation Requirements the Defendants' testified to the CDI that they

7    would maintain, pursuant to their Exhibit 19 filings.

8    126.   NMIC's services for THI (VFCC) also provided that NMIC consult

9    and assist VFCC in conducting market data analysis and market data research, and

10   provided marketing data management and customer information management

11   services.  All of these services provided by NMIC for THI (VFCC) violated

12   §1861.16(c)(1).

13   127.   NMIC's additional services for THI (VFCC), reveals that NMIC

14   provide marketing training sessions, information exchanges, employee-oversight,

15   and other similar activities, for THI (VFCC) all of which are in direct violation of

16   §1861.16(c)(1).

17   128.   The aforementioned services provided by NMIC for THI (VFCC), as

18   outlined herein, was not conducted at arm's length.  Rather, they were conducted at

19   the regional level by employees and teams since 2009 and throughout the Class

20   Period.  The operations of NMIC and THI (VFCC) were not acting separate and

21   independent.  Nor were the services provided a temporary arrangement, rather it

22   was a permanent and on-going agreement between NMIC and THI (VFCC),

23   throughout the Class Period.

24   129.   Starting in 2009, and continuing throughout the Class Period, the

25   Defendants and THI (VFCC) concealed their illegal on-going fraudulent activity

26   from the Plaintiffs, Class members and the CDI.

27   130.   Misrepresentations and omissions were made by Defendants

28   throughout the Class Period, through their agents and representatives, business

31

CLASS ACTION COMPLAINT

1  employees, marketing employees, sales employees including the Defendants'

2  business product producers that are authorized to transact business for the

3  Defendants.

4          131.   In addition to the above, Defendants' misrepresentations, omissions

5  and concealment, included the false and material misrepresentations made in the

6  Exhibit 19's filed by the Defendants with the CDI since January 1, 2009 and

7  throughout the Class Period.  The written misrepresentations include materially

8  false statements that: "all business operations, marketing, and sales operations and

9  activities of Defendants operate completely separate and independent from each

10  other, pursuant to 1861.16(c)(1)."

11         132    Plaintiffs and the Class did not become aware of the facts giving rise to

12  their causes of action and Defendants' fraudulent concealment, until approximately

13  November 2017.  Plaintiffs discovered through privileged communications with

14  their personal counsel during a review of their finances that began in October 2017,

15  the material misrepresentations and fraudulent conduct alleged throughout this

16  Complaint.

17         133.   On or around January 1, 2009, and during the Class Period, Cecil

18  Autry, former Associate Vice President, Regional Counsel for NMIC, had an

19  obligation to make certain, that the implementation of all NMIC programs,

20  complied with all requirements of the California Insurance Code (CIC) and

21  California Law.  Cecil Autry played a key role in the development and

22  implementation of an illegal service agreement between NMIC and THI (VFCC).

23  He acted in an actionable fraudulent fashion by continuing to conceal from the CDI,

24  Plaintiff and the Class, the illegal services between NMIC and THI (VFCC).

25         134.   Since 2009, Cecil Autry had knowledge that Defendants, continued to

26  write PPA policies in California under a falsely claimed Super Group Exemption.

27  He became aware of these facts through his job duties with NMIC, which includes

28  the oversight of California Law and California Insurance Regulations pertaining to

32

CLASS ACTION COMPLAINT

1    the marketing and sales of PPA's.  He knew that the CDI was not aware of the fact,

2    that NMIC was performing illegal services for the marketing, sales and business

3    operations for THI (VFCC).  He knew that by NMIC performing the

4    aforementioned services for THI (VFCC), NMIC, no longer maintained the

5    Separation Requirement between insurers with common ownership, thus there were

6    no longer qualified for the Super Group Exemption and must Cross Company offer

7    the lowest Good Driver rate from among all the Defendants.  He knew that the

8    Defendants were making a false claim to the CDI (i.e. that the Defendants were

9    acting with genuine and complete independence from each other.)  He therefore

10   knew, that the Defendants were violating the Separation Requirements, made in

11   their statements pursuant to their Exhibit 19 filings.

12       135.   Anne Saxon, is General Counsel for NMIC since before 2009.  In her

13   role, she is responsible for the oversight of California Law and California Insurance

14   Regulations pertaining to the marketing and sales of PPA's.  In 2009, Saxon was

15   informed of Defendants' non-compliance with Cal. Ins. Code §1861.16(c)(1).

16   Saxon was aware that during that time, Defendants continued to write PPA policies

17   in California under a falsely claimed Super Group Exemption.  Saxon, thru her job

18   duties for NMIC, became aware of the illegal services, as outlined herein, between

19   the Defendants.

20       136.   Anne Saxon, played a key role in the approval of the development and

21   implementation of the illegal service agreement between NMIC and THI (VFCC).

22       137.   Saxon was informed of the non-compliance of §1861.16(b), requiring

23   companies that are not otherwise exempt, to Cross Company offer the PPA with the

24   lowest Good Driver rate, from among all the Defendant affiliated insurers.  Saxon

25   concealed the Defendants' illegal activities, from the Plaintiffs, Class Members and

26   the CDI.  Saxon never informed the CDI that since around January 1, 2009 and

27   throughout the Class Period, the Defendants were not operating with genuine and

28   complete independence, and thus were non-compliant with their filing of their

1  Exhibit 19's with the CDI, and thus, they were not entitled to the Super Group

2  Exemption, they purported to operate under.

3       138.   Paul Ballew, Jen Hanley and Tony Gonsalves, under information and

4  belief, were all employees of NMIC since around 2009 and at times, during the

5  Class Period.  All had significant roles in the subject matter of the services being

6  provided by NMIC for THI (VFCC) since it began on or around January 1, 2009.

7  All were involved in the illegal marketing efforts between NMIC and THI (VFCC).

8  They became aware through meetings, seminars, and various communications, of

9  the material misrepresentations, omissions, concealment and actionable conduct

10  being taken by the Defendants.

11       139.   Ballew, Hanley and Gonsalves, were aware that the CDI was never

12  informed by the Defendants, Control Group or NMIC, or any affiliated entity, that

13  NMIC, in 2009, had begun the various illegal activities for THI (VFCC) as outlined

14  herein.  All three were aware that the Defendants' conduct violated the Separation

15  Requirements of §1861.16(c)(1), and thus the Defendants were operating their

16  business illegally when they failed to Cross Company offer the PPA policy with the

17  lowest Good Driver rate, among all the Defendants' insurers.

18       140.   Each of these officers, managers and employees, has knowledge of the

19  Defendants' material misrepresentations, omissions, fraudulent conduct and non-

20  compliance regarding the violations of the Separation Requirements.  Thus, the

21  Defendants were not entitled to the Super Group Exemption status.  Accordingly,

22  each of these officers, managers and employees are aware that since 2009, and

23  throughout the Class Period, the Defendants' were required to Cross Company offer

24  the PPA policy with the lowest Good Driver rate, among all the Defendant insurers.

25       141.   Throughout the Class Period, each of these officers, managers and

26  employees, had knowledge that the Defendants concealed from the Plaintiff, Class

27  Member and CDI, the fact that NMIC was providing services for THI (VFCC),

28  which violated California Law, the CIC and the Defendants' Exhibit 19 filings.

CLASS ACTION COMPLAINT

142.   At no time, did the CDI ever become aware that the services and actions indicated in the Complaint, had begun, as between NMIC and THI (VFCC).

143.   In or around July 2010, in an effort to conceal their illegal and fraudulent services act, that had begun in 2009, the Defendants made a request to the CDI, that the CDI 'pre-approve' a servicing plan between NMIC and THI (VFCC).  At no time, did the Defendants inform the CDI, that since 2009, NMIC and THI (VFCC), had already been conducting the aforementioned illegal services outlined in the Complaint herein.

144. Defendants, through fraudulent misrepresentation, omission and concealment, purposefully mislead the CDI, that the services between NMIC and THI (VFCC) outlined herein, was at the pre-approval stage, rather than the truth that those services were currently being conducted by Officers, Managers and employees of the Defendants.  The Defendants illegal services, were also a violation of CIC §1250.1 as no pre-approval or approval from the CDI for those services was ever granted the Defendants

145.   Due to the fact that the services requested by the Defendants and THI clearly violated the Separation Requirements outlined in §1861.16(c)(1), coupled with the fact that each Defendant had filed an Exhibit 19, claiming they are exempt from the Cross Company offer requirement due to alleged independence between Defendants, the CDI refused to approve the services request between NMIC and THI (VFCC).

146.   Despite the fact that the Defendants never had their illegal joint servicing methods, or shared business model pre-approved or approved by the CDI, the Defendants continued with their fraudulent, illegal services throughout the Class Period.

147.   The Defendants', officers, managers and employees referenced herein, acted in a fraudulent, actionable, manner.  The conduct was done with malice and

1    intent, so as to conceal from the Plaintiffs and Members of the Class the clear

2    violations of the California Law, CIC and California Insurance Regulations.

3        148.    With regard to Plaintiffs, Francisco Rocha and Ester Rocha, they were

4    sold a policy by Defendant, AMCO, with a stated "Total Policy Premium" of

5    $923.62, as outlined on Page 3 of **Exhibit A**.  At the same time, for the same policy

6    period and for the same or substantially the same coverages, Defendant VFCC had

7    policies available that should have been offered by the Defendant's agents and

8    representatives, and sold by the Defendant VFCC for $817.75.  Defendants', and

9    the Control Group, should have offered through their agents and representatives,

10   and the Defendants and the Control Group should have sold a policy to Francisco

11   and Ester Rocha from VFCC which is $105.87 less than what they were charged

12   and paid for, in accordance with the Cross Company offer requirement.

13       149.    Until 2016, Plaintiffs, did not have knowledge of, or the means to

14   determine, whether they were being offered the lowest Good Driver rate for their

15   policies.  Due to Defendants' on-going concealment, and fraudulent conduct, the

16   Plaintiffs could not have discovered until their counsel's review of their personal

17   finances in 2017 that they were being continually overcharged their premiums, by

18   not being offered or sold the lowest Good Driver rate, throughout the Class Period.

19       150.    Defendants' wrongful conduct entitles Plaintiffs and the Class to

20   recover, in addition to their actual damages, punitive damages and attorneys' fees.

21

22                           **COUNT IV**
                  **VIOLATION OF §17200 OF THE CALIFORNIA BUSINESS AND**
23                           **PROFESSIONS CODE**
                           **(Unlawful Business Practice)**
24
         151.    Plaintiffs reallege the paragraphs above, as if fully set forth herein.
25
         152.    California Business and Professions Code §17200 *et seq*. prohibits acts
26
     of unfair competition, which includes unlawful business practices.
27

28

                                    36

1    153.   Defendants engaged in unlawful business practices by violating Cal.
2    Ins. Code §§1861.02, 1861.025.

3    154.   Defendants engaged in unlawful business practices by violating Cal.
4    Ins. Code §1861.16.

5    155.   Through the Class Period, the Defendants continued to engage in
6    unlawful business practices by violating Cal. Ins. Code §§§1861.02, 1861.025 and
7    1861.16 and by failing to reimburse Plaintiffs and the members of the Class for
8    amounts in breach of the Cal. Ins. Code.

9    156.   As a direct and proximate cause of Defendants' unlawful methods of
10   competition and unlawful acts or practices, Plaintiffs and the Class have lost money
11   through unlawfully excessive automobile insurance premiums.

12   157.   As a direct and proximate result of these same unlawful acts or
13   practices, Defendants have been unjustly enriched and should be required to make
14   restitution to Plaintiffs and the Class pursuant to §§17203 and 17204 of the
15   California Business and Professions Code.

16
### COUNT V
### VIOLATION OF §17200 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE
### (Unfair Business Practice)

19   158.   Plaintiffs hereby incorporate by reference the allegations contained in
20   the preceding paragraphs.

21   159.   Defendants' acts and practices as alleged in this Complaint constitute
22   unfair business practices that violate California Business and Professions Code
23   §17200 *et seq.*

24   160.   The wrongful conduct alleged above and the unfair and unlawful
25   charging of excessive insurance premiums and the making of false representations
26   and/or concealments about the premiums charged violates public policy and creates
27   harm to Plaintiffs and the Class that vastly outweighs any utility of Defendants'

28

1    conduct (of which there is none.)  Consumers, unaware of Defendants'

2    misrepresentations and misconduct, could not have reasonably avoided the harm.

3        161.    Through the Class Period, Defendants have failed to disclose the facts

4    concerning their insurance premiums overcharges, facts that would be and are

5    material to Plaintiffs and the Class.

6        162.    As a direct and proximate cause of Defendants' unfair methods of

7    competition and unfair or deceptive acts or practices, Plaintiffs and the Class have

8    lost money through the payment of excessive insurance premiums.

9

10

11

**COUNT VI**
**VIOLATION OF §17200 OF THE CALIFORNIA BUSINESS AND**
**PROFESSIONS CODE**
**(Fraudulent Business Practice)**

12

13        163.    Plaintiffs hereby incorporate by reference the allegations contained in

the preceding paragraphs.

14

15        164.    Defendants' acts and practices as alleged in the Complaint constitute

16    fraudulent business practices that violate the Unfair Competition Law, Cal. Bus. &

17    Prof. Code §17200 *et seq*.  Defendants engaged in fraudulent business practices by

18    failing to disclose material facts concerning their automobile insurance rates,

19    including that their rates violated Cal. Ins. Code §1861.16, and by representing that

20    they provided to the statutory Good Drivers, the lowest rates within their Control

Group.

21

22        165.    Defendants' fraudulent practices were designed to induce Plaintiffs and

23    the Class to purchase and maintain automobile insurance at Defendants' illegal rate

under circumstance where there was a likelihood of being deceived.

24

25        166.    As a direct and proximate cause of Defendants' fraudulent methods of

26    competition and deceptive acts or practices, Plaintiffs and the Class have lost money

by overpaying for automobile insurance at illegal rates.

27

28

**COUNT VII**

38

## DECLARATORY RELIEF

167.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

168.    An actual bona fide controversy exists between Plaintiffs and the Proposed Class, on the one hand, and Defendants, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties.

## PRAYER

169.    WHEREFORE, the Plaintiffs request that the court enter judgment in their favor and in the favor of the members of the Class and against Defendants jointly and severally as follows:

a.    Determining that the action if properly maintained as a Class Action; Certifying the Class; Certifying the Plaintiffs as Class representatives for the Class; and appointing the Plaintiffs' Counsel as Counsel for the Class;

b.    Awarding compensatory and punitive damages in excess of $5,000,000.00, plus Attorneys' fees and costs;

c.    Awarding pre-judgment interest;

d.    Awarding equitable, injunctive and declaratory relief;

e.    Pursuant to Business and Professions Code Section 17203;

(i)    permanently enjoining all Defendants, their employees, agents, representatives, successors, assigns, and all persons who have acted in concert with them from further committing the acts of unfair competition alleged above;

(ii)    requiring them to restore to the Plaintiffs and the Class the money acquired by Defendants' illegal acts and practices constituting unfair competition;

(iii)    requiring them to offer replacement of the Plaintiff and the Class members into Defendants' California licensed Control Group

39

1    companies with the lowest Good Driver rate for the coverage as

2    required by California Law;

3    f.    Providing such other and further relief as is just and appropriate.

4

5

6    Dated: September 30, 2021              **KABATECK LLP**

7

8                                          By:    */s/ Shant A. Karnikian*
                                                  Brian S. Kabateck
9                                                 Shant A. Karnikian
                                                  *Counsel for Plaintiffs and the*
10                                                *Proposed Class*

11

12    Dated: September 30, 2021              **KISLING NESTICO & REDICK, LLC**

13

14                                         By:    */s/ John J. Reagan*
                                                  John J. Reagan
15                                                Christopher J. Van Blargan
                                                  *Counsel for Plaintiffs and the*
16                                                *Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs and

3    the members of the Class hereby demand trial by jury on all eligible claims and

4    issues.

5

6    Dated: September 30, 2021                    **KABATECK LLP**

7

8                                          By:    */s/ Shant A. Karnikian*
                                                   Brian S. Kabateck
9                                                  Shant A. Karnikian
                                                   *Counsel for Plaintiffs and the*
10                                                 *Proposed Class*

11

12   Dated: September 30, 2021                    **KISLING NESTICO & REDICK, LLC**

13

14                                         By:    */s/ John J. Reagan*
                                                   John J. Reagan
15                                                 Christopher J. Van Blargan
                                                   *Counsel for Plaintiffs and the*
16                                                 *Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT