JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | EDCV 21-1669-GW-SPx | Date | September 12, 2023 |
|---|---|---|---|
| Title | *Francisco Rocha, et al. v. AMCO Insurance Company, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**    **IN CHAMBERS - FINAL RULING ON DEFENDANTS' RENEWED MOTION TO DISMISS [81]**

Attached hereto is the Court's Final Ruling on Defendants' Renewed Motion to Dismiss [81]. The Court GRANTS the Motion. Because the defect in Plaintiffs' claim cannot be cured by amending the Complaint seeking further litigation in this forum, the Court grants dismissal without leave to amend.

Initials of Preparer    JG    :

***Francisco Rocha et al. v. AMCO Insurance Company et al.***; Case No. 5:21-cv-01669-GW-(SPx)
Final Ruling on Renewed Motion to Dismiss

## I.    Background

Plaintiffs Francisco Rocha and Ester Rocha sued Defendants Amco Insurance Company ("Amco"), Nationwide Insurance Company of America ("Nationwide"), Allied Property and Casualty Insurance Company ("Allied"), Victoria Fire and Casualty Company ("Victoria"), Crestbrook Insurance Company ("Crestbrook"), Depositors Insurance Company ("Depositors"), Nationwide Mutual Insurance Company ("NMIC"), and Titan Indemnity Company ("Titan") – hereinafter referred to as "Defendants" collectively – on behalf of themselves and a putative class of current and former policyholders for failure to offer and sell statutorily mandated "Good Driver Discount" ("GDD") policies and for related violations of California law.  *See* Complaint ("Compl."), Docket No. 1.  Defendants are all related and affiliated companies within the same "Control Group," called the Nationwide Corp. Group, identified by the National Association of Insurance Commissioners ("NAIC") as Group # 0140.  *Id.* ¶ 14.  With the exception of Victoria – which filed separately during the relevant times – all Defendants' Rate Filings with the California Department of Insurance ("CDI") are under the same Common Class Plan.  *Id.* ¶ 37.  Victoria is owned by THI Holdings, Inc. ("THI"), which in turn is owned by NMIC.  *Id.*  Plaintiffs allege that during the class period, Defendants did not comply with the requirements of California Insurance Code § 1861.16(c)(1) and were therefore not entitled to the Super Group Exemption from the requirement to sell appropriate GDD policies.  *Id.* ¶ 51.

### A.    Statutory Context

California law requires insurance companies − that write automobile coverage for liability, physical damage collision "or any combination thereof" for defined private passenger vehicles – to sell GDD policies to statutorily qualified drivers.  *Id.* ¶ 3.  Under Cal. Ins. Code § 1861.16(b), an agent or representative of an insurer within a Control Group must offer a qualified Good Driver the insurance policy with the lowest rates for that coverage that is offered by any of the insurers within that Control Group ("Cross-Company offer requirement").  *Id.* ¶ 47.  There is a limited exception to the Cross-Company offer requirement in Cal. Ins. Code § 1861.16(c)(1), known as the Super Group Exemption.  *Id.* ¶ 48.  It states that in order to receive the exception, all insurers in the Control Group must comply with strict criteria that establishes genuine company independence from the other affiliated insurers in the Control Group (the "Separation

Requirement"). *Id.* The Separation Requirement is composed of eight factors:

> (A) The business operations of the insurers are independently managed and directed;
> (B) The insurers do not jointly develop loss or expense statistics or other data used in rate making, or in the preparation of rating systems or rate filing;
> (C) The insurers do not jointly maintain or share loss or expense statistics, or other data used in rate making or in the preparation of rating systems or rate filings. This condition shall not apply if the data is generally available to the industry through a non-affiliated third party and is obtained from that third party;
> (D) The insurers do not utilize each other's marketing sales, or underwriting data;
> (E) The insurers act independently of each other in determining, filing, and applying base rates, factors, class plans, and underwriting rules, and in the making of insurance policy forms;
> (F) The insurers' sales operations are separate;
> (G) The insurers' marketing operations are separate; and,
> (H) The insurers' policy service operations are separate.

*Id.* All eight criteria must be strictly adhered to in order to exempt insurers from the Cross-Company offer requirement. *Id.* ¶ 49.

Plaintiffs assert that during the class period, Defendants filed "Exhibit 19s"[1] with the CDI for each of the companies in the Control Group. *Id.* ¶ 56. Such a filing is an assertion under oath that Defendants are, and will continue, operating each individual Defendant insurer completely separate and independent, according to the Separation Requirement factors laid out in Cal. Ins. Code § 1861.16. *Id.* Plaintiffs allege that during the class period, Defendants did not comply with these eight criteria and were therefore not entitled to the Super Group Exemption. *Id.* ¶ 51. As discussed in further detail below, Plaintiffs allege that Defendants failed and continue to fail to meet the Separation Requirements of § 1861.16(c)(1)(A), (F), (G), and (H). *Id.* ¶ 59.

**B.    Procedural History**

i.    *Rocha I*

---

[1] *See King v. Nat'l Gen. Ins. Co.*, No. 4:15-cv-00313-DMR, 2021 WL 2400899, at *13 (N.D. Cal. June 11, 2021) ("Exhibit 19 is a form that must be included in a filing by an insurance company to assert such facts as the insurer represents will qualify the insurer for the so-called 'Super Group Exemption' from the restrictions of Section 1861.16 that are placed upon an insurer that operates within a Control Group (one of multiple companies having common ownership or operating in California under common management or control). The filing of an Exhibit 19 is not a certification that an insurer actually qualifies for the so-called 'Super Group Exemption,' it is just an assertion by the insurer . . . .").

In April 2018, Plaintiffs filed a complaint in the prior action, *Francisco Rocha et al. v. AMCO Insurance Company et al.* ("*Rocha I*"), 5:18-cv-00769-GW-(SPx), in which Plaintiffs raised the same claims and similar allegations against Defendants.  Plaintiffs asserted the following causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud and misrepresentation; (4) unlawful business practice, in violation of § 17200 of the California Business and Professions Code; (5) unfair business practice, in violation of § 17200 of the California Business and Professions Code; (6) fraudulent business practice, in violation of § 17200 of the California Business and Professions Code; and (7) declaratory relief.  *See Rocha I*, Complaint, Docket No. 1.

In August 2018, Defendants filed a motion to dismiss in *Rocha I*, arguing that the Court lacked jurisdiction because the CDI has exclusive authority to determine whether insurers are within the Super Group Exemption.  *See Rocha I*, Defendants' Motion to Dismiss for Lack of Jurisdiction, Docket No. 13.  In its December 6, 2018 ruling on this motion, the Court considered whether California law – namely, Cal. Ins. Code § 1861.16(c)(1), § 1860.1, and § 1860.2 – provides for the CDI's exclusive jurisdiction over determinations regarding the Super Group Exemption.  *See Rocha I*, December 16, 2018 Order on Defendants' Motion to Dismiss ("December 2018 Order"), Docket No. 39.  The Court stated that "[w]hether the CDI would have exclusive jurisdiction over this dispute therefore depends – in part – on whether the denial or approval of the Super Group Exemption falls under the agency's ratemaking authority."  *Id.* at 6.  The Court further noted that "Defendants contend that the filing of Exhibit 19s is part of an insurer's rate application and 'part and parcel of ratemaking because it directly impacts the rates charged to insureds.'"  *Id.*  Neither party provided an on-point case that decided whether the CDI had exclusive jurisdiction over the determination of Super Group Exemption status.  *Id.* at 8.  Ultimately, the Court did not need to decide whether the CDI had *exclusive* jurisdiction, as it concluded that the CDI had *primary* jurisdiction over Super Group Exemption status.  *Id.*  It also issued a stay in the matter pending the CDI's determination.  *Id.*

On February 19, 2019, Plaintiffs' attorney submitted a "Request for Assistance" to the CDI, asking the agency to convene an investigation, gather evidence through depositions and other means, and issue a decision.  *See* Defendants' Request for Judicial Notice ("RJN"), Ex. 12 ("CDI Letter"), Docket No. 82-12 at 1.  On January 10, 2020, the Commissioner of the CDI issued a letter, stating that he had:

> conducted an investigation in response to the Request for
> Assistance.  As part of its investigation, the [CDI] reviewed
> [Plaintiffs'] allegations of misconduct, pleadings filed in [*Rocha I*],
> and regulatory filings relevant to the allegations – including the
> Nationwide affiliates' rate filings with the [CDI], the [CDI's]
> approvals of those rate filings, publicly available reports of [CDI]
> market conduct examinations, and related regulatory documents.

*Id.*  When the CDI solicited from both parties evidence of whether the Control Group had
misrepresented facts about its entitlement to a Super Group Exemption, Defendants answered that
they knew of none, and Plaintiffs did not present admissible evidence.  *Id.* at 1-2.  Applying the
probable cause standard set forth in Cal. Ins. Code § 1858, and "[h]aving evaluated the allegations,
evidence, and argument presented during the prehearing investigation, the Commissioner f[ound]
no probable cause for [Plaintiffs'] allegations."  *Id.* at 2.  The Commissioner continued: "To the
extent [Plaintiffs'] request for a formal discovery and deposition process may be construed as a
request for a public administrative hearing, the Commissioner denies the request for hearing."  *Id.*
In coming to his conclusion, the Commissioner reviewed the rate application filings Victoria
submitted to support its compliance with the Super Group Exemption criteria.  *Id.* at 3.  Although
the Commissioner noted that Defendants had submitted one "*unexecuted* service plan showing
[NMIC] apparently contemplated entering into an agreement to provide certain marketing services
to THI Holdings, Inc. – Victoria's parent company[,]" the Commissioner was "unaware of any
executed service plan" that might violate the terms of the Super Group Exemption criteria.  *Id.* at
3-4 (emphasis in original).  The CDI Letter stated that "[t]he most that could be said is that the
plan, if executed or acted upon, *could* be implemented or applied in a manner that may violate the
Super Group Exemption criteria.  But the service plan could also have been implemented in a
manner consistent with the Super Group Exemption."  *Id.* at 4.  The Commissioner further wrote
that he "[found] no evidence indicating [Defendants] executed the service plan or acted upon its
tenets at all."  *Id.*  The Commissioner concluded:

> Based on the allegations, evidence, and argument presented by both
> parties to the [CDI] in the course of this prehearing investigation,
> the Commissioner finds that the Rochas have not established
> probable cause that Victoria operated in a manner contrary to the
> Super Group Exemption criteria during the time it wrote private
> passenger automobile business in California.  Further, the
> Commissioner['s] own investigation has not found probable cause
> that the Rochas' allegations have merit.  For the above reasons, the
> Commissioner declines to revisit his previous determinations that

> NMIC and Victoria satisfied each of the Super Group Exemption
> conditions set forth in [Cal. Ins. Code] section 1861.16(c).

*Id.* at 4-5.

On February 14, 2020, Defendants filed a renewed motion to dismiss, arguing that Plaintiffs failed to state a claim upon which relief could be granted because the CDI determined that there was no probable cause to initiate a public hearing. *Rocha I*, Defendants' Renewed Motion to Dismiss, Docket No. 62. Defendants further asserted that Plaintiffs' only remedy at that point was a writ proceeding pursuant to Cal. Ins. Code § 1858.6. The Court issued a tentative order prior to the hearing on the renewed motion, provisionally indicating that it was "inclined to agree with Defendants that the CDI's determination dictates the resolution of this case. In light of the CDI's order, Plaintiffs' argument that the CDI had not specifically approved Defendants' application of the Good Driver Discount rates under the Super Group exemption is no longer viable." RJN, Ex. 8-A, Docket No. 82-1 at 9. But on the day of the hearing, May 18, 2020, Plaintiffs filed a notice of voluntary dismissal pursuant to Federal Rules of Civil Procedure 41(a). *See Rocha I*, Docket No. 73. The Court then held a hearing on Plaintiffs' voluntary dismissal on June 4, 2020, in which it made its tentative ruling its final and allowed Plaintiffs to dismiss their complaint, terminating *Rocha I*. *See Rocha I*, June 4, 2020 Order on Plaintiffs' Motion for Dismissal, Docket No. 82.

ii.    *Present Action*

On October 1, 2021, Plaintiffs filed the instant case, which is essentially a refiling of *Rocha I*. Plaintiffs are again suing Defendants on behalf of themselves and a putative class of current and former policyholders for failure to offer and sell statutorily mandated GDD policies and for related violations of California law. *See generally* Compl. As discussed above, Plaintiffs allege that Defendants failed to comply with several of the Separation Requirement criteria during the class period. *Id.* ¶ 59. Specifically, Plaintiffs allege that beginning in 2009 and throughout the class period, NMIC, the owner of Defendant insurers, and THI, the owner of Victoria, began a service plan for THI. *Id.* ¶ 122. It did so by providing in-depth business, marketing, and sales services for THI (and consequently Victoria) in violation of the Separation Requirement criteria under Cal. Ins. Code § 1861.16(c)(1). *See id.* ¶¶ 122, 123, 125, 126, 127. Allegedly, these joint services were not a temporary arrangement, but rather a permanent and on-going agreement between NMIC and THI (Victoria) throughout the class period. *Id.* ¶ 128. Defendants never informed Plaintiffs that they had begun a business model that violated the Separation Requirement, and Defendants

purportedly made false representations that "all business operations, marketing, and sales operations and activities of Defendants operate completely separate and independent from each other, pursuant to 1861.16(c)(1)." *Id.* ¶¶ 130-31. Accordingly, Defendants' agents and representatives were obligated to offer, and Defendants were legally obligated to sell, the policies with the lowest available Good Driver rates from any of the insurers in the Nationwide Corp. Group, pursuant to § 1861.16(b). *Id.* ¶ 60.

Absent the Super Group Exemption, Defendants must offer the lowest Good Driver rate for their Private Passenger Automobile Insurance policies ("PPA") among all the insurers in the Control Group. *Id.* ¶ 55. Victoria had the lowest Good Driver rate, but Plaintiffs allege that agents and representatives of Defendants did not offer them this deal. *Id.* ¶¶ 55, 65. On May 4, 2016, Plaintiffs purchased Good Driver discounted policies covering a six-month period (May 4, 2016 to November 4, 2016) from Amco for $923.62. *Id.* ¶¶ 64, 68, 97. At the same time, for the same policy period, and for the same or substantially similar coverages for identical vehicles, Victoria's policies totaled $817.75. *Id.* ¶¶ 69, 98. Plaintiffs allege that Defendants' agents should have offered the lower Victoria Good Driver rate, and Plaintiffs should have been charged $105.87 less than what they paid. *Id.* ¶¶ 72, 98.

In the present case, Plaintiffs assert the following causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud and misrepresentation; (4) unlawful business practice, in violation of § 17200 of the California Business and Professions Code; (5) unfair business practice, in violation of § 17200 of the California Business and Professions Code; (6) fraudulent business practice, in violation of § 17200 of the California Business and Professions Code; and (7) declaratory relief. *See generally id.* Plaintiffs identify the following class of persons:

> All of the Defendants' current and former policyholders qualified under California Law to purchase a Good Driver Discount ("GDD") policy who, from January 1, 2009 through the last date Titan and Victoria sold personal auto policies in California ("Class Period"), paid premiums for Defendants' automobile policies containing a GDD (as defined in Cal. Ins. Code § 660), in excess of the lowest rate GDD policy available for that coverage from another insurance company within Defendants' California-Licensed Common Ownership, Management or Control ("Control Group").

*Id.* ¶ 1.

On January 24, 2022, Defendants filed a Motion to Dismiss, in which Defendants argued

that, *inter alia*, (1) the Court lacks jurisdiction to hear the case because it falls within the CDI's jurisdiction, and the CDI has already exercised its statutory authority over this dispute, (2) Plaintiffs fail to allege a violation of Cal. Ins. Code § 1861 because only sales agents have a duty to offer the Victoria policy, not insurers, and (3) Plaintiffs fail to state any other claim. *See* Defendants' Motion to Dismiss, Docket No. 25. Plaintiffs filed an opposition, *see* Opposition to Defendants' Motion to Dismiss, Docket No. 36, and Defendants filed a reply, *see* Reply in Support of Motion to Dismiss, Docket No. 38. On February 25, 2022, Plaintiffs filed a Motion for Referral of Matter to the California Department of Insurance for Primary Jurisdiction Ruling and Stay of Proceedings, Docket No. 33, contending that they have new evidence that bears upon Defendants' Super Group Exemption status, which is a determination that must (or should) be made by the CDI. Defendants filed an opposition, *see* Defendants' Opposition to Plaintiffs' Motion for Referral, Docket No. 34, and Plaintiffs filed a reply, *see* Reply in Support of Referral, Docket No. 39.

Given that the referral motion raised a jurisdictional question, the Court addressed the Motion for Referral first. The Court heard argument on April 25, 2022, at which point the Court ordered supplemental briefing on the issue of whether the CDI Letter was final for purposes of appellate review. *See* Docket No. 42. The Court heard additional argument on the matter on May 12, 2022 and issued its final rulings on May 13, 2022. *See* May 13, 2022 Order on Defendants' Motion to Dismiss ("May 13, 2022 Order"), Docket No. 47. In its May 13 ruling, the Court granted the Motion for Referral to the CDI, stayed the case pending the CDI's determination, and denied the Motion to Dismiss without prejudice, noting that Defendants were allowed to reassert the Motion to Dismiss after the stay has been lifted. *Id.*

On May 23, 2022, Defendants filed a Motion for Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(b) (the "Interlocutory Appeal Motion"), requesting that the Court certify its May 13, 2022 Order for interlocutory appeal. *See* Docket No. 54. The Court issued a tentative order prior to the hearing on the Interlocutory Appeal Motion, indicating that it was inclined to "defer[] to the determination of the CDI in the first instance, rather than allowing these questions to play out in the federal courts at this time." *See* Docket No. 58 at 10. The Court then held a hearing on Defendants' Interlocutory Appeal Motion on June 23, 2022, in which it made its tentative ruling its final and denied Defendants' request. *See* June 23, 2023 Order on Defendants' Motion for Certification of Interlocutory Appeal, Docket No. 59.

On June 2, 2022, Plaintiffs filed a "Primary Jurisdiction Referral and Request for Hearing" with the CDI in accordance with this Court's May 13, 2022 Order.  *See* RJN, Ex. 13, Docket No. 82-13.  Plaintiffs requested that the CDI "consider additional evidence" and "hold a quasi-judicial hearing and allow discovery pursuant to the Court's primary jurisdiction referral and answer the Court's inquiry whether Nationwide was entitled to the Super Group Exemption during the class period." *Id.* at 3.  On May 24, 2023, the CDI issued its decision on Plaintiffs' "Primary Jurisdiction Referral and Request for Hearing."  *See id.*, Ex. 1, Docket No. 82-1.  The CDI's order began by noting:

> To support their renewed allegations, the Rochas submitted a partially executed MSA, declarations and deposition transcripts from other litigation involving Nationwide, articles about Nationwide, and LinkedIn profiles of former and current Nationwide executives.  The Rochas assert this newly submitted evidence, much of which pre-dates *Rocha I* and was obtained by searching public sources after *Rocha I* was dismissed in 2020, collectively demonstrates that Nationwide violated the Super Group requirements by controlling the business, sales, and marketing operations of its affiliates, including Victoria.

*Id.* at 3.  The CDI's order stated, "[h]aving evaluated the allegations, evidence, and argument presented during the prehearing investigation, the Commissioner finds no probable cause for the Rochas' allegations.  To the extent the Rocha[s'] request for a formal discovery and deposition process may be construed as a request for a public administrative hearing, the Commissioner denies the request for hearing." *Id.* at 3-4.  Further, the CDI explained: "[f]or more than a decade, Victoria has repeatedly filed private passenger automobile rate applications that included evidence supporting its compliance with the Super Group Exemption criteria.  The Commissioner reviewed those rate applications and, in each case, determined that Victoria satisfied the Super Group Exemption.  Victoria withdrew from the California private passenger automobile insurance market effective November 21, 2018." *Id.* at 4-5.[2]

With respect to the partially executed MSA that was purportedly signed by THI's then-president Katherine Mabe, the CDI found that "[Ms.] Mabe's declaration indicates that she does not recall executing or carrying out the service plan … and the Rochas provide no direct evidence

---

[2] The CDI noted that "by withdrawing from the auto insurance market on November 21, 2018, Victoria appears to have eliminated the possibility of future violation of the Super Group Exemption criteria." *Id.* at 5 n.26.

to the contrary." *Id.* at 5.  Further, the CDI explained that "[a] possibly accidental signature by Ms. Mabe does not supply probable cause to conclude the parties performed the July 6 MSA or that THI or Victoria were controlled by NMIC, which did not execute it." *Id.*  Moreover, the CDI recognized that "[t]here is nothing necessarily illegal about contemplating such a service agreement without implementing it." *Id.* at 6.  Nevertheless, the CDI "reviewed the unexecuted MSA and the July 6 MSA in their entirety" and concluded that "the MSA is not manifestly inconsistent with the Super Group Exemption, even if it was performed." *Id.*

Turning to the other evidence submitted by Plaintiffs, the CDI determined that "on balance" "the Rochas' newly submitted evidence does not supply probable cause for revisiting the Department's prior determination that Nationwide and Victoria were entitled to the Super Group Exemption" because "the testimony [in connection with other cases] was elicited to support different claims and does not provide enough specificity regarding whether Nationwide and Victoria failed to comply with the factors enumerated in 1861.16(c)(1)(A)-(H)." *Id.*  Indeed, the CDI noted that "[t]he general nature of much of this information [(*i.e.* declarations and deposition transcripts from other litigation involving Nationwide, articles about Nationwide, and LinkedIn profiles of former and current Nationwide executives)] does not provide probable cause to overturn the Commissioner's prior determination." *Id.*  As such, the CDI concluded:

> The Department stands ready to assist if the Court wishes to certify future questions based upon specific evidence developed to address the claims in *Rocha II*.  At present, however, and based on the allegations, evidence, and argument presented by both parties to the Commissioner in the course of this prehearing investigation, the Commissioner finds the Rochas have not established probable cause that Victoria operated in a manner contrary to the Super Group Exemption criteria during the time it wrote private passenger automobile business in California.  Further, the Commissioner['s] own investigation has not found probable cause that the Rochas' allegations have merit.  For the above reasons, the Commissioner declines to revisit his previous determinations that NMIC and Victoria satisfied each of the Super Group Exemption conditions set forth in [Cal. Ins. Code] section 1861.16(c).

*Id.*

Defendants now bring this renewed motion to dismiss.[3]  *See* Renewed Motion to Dismiss

---

[3] Defendants request that the Court take judicial notice of twenty-four documents.  *See* RJN, Docket No. 82.  Plaintiffs do not dispute the authenticity of these documents or oppose judicial notice.  *See generally* Opp.  The Court considers the documents appropriate for judicial notice.  *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir.

("Renewed MTD"), Docket No. 81.  Plaintiffs oppose, *see* Opposition to Renewed Motion to Dismiss ("Opp."), Docket No. 84, and Defendants reply, *see* Reply in Support of Renewed Motion to Dismiss ("Reply"), Docket No. 85.

On August 31, 2023, the Court heard oral argument on Defendants' Renewed Motion to Dismiss and took the matter under submission.  *See* Docket No. 88.  Prior to the hearing, the Court issued a tentative ruling.  *See* Docket No. 87.  At the hearing, Plaintiffs' counsel primarily argued that this action does not fall within the Insurance Commissioner's exclusive jurisdiction because Plaintiffs are not challenging an approved rate.  Instead, Plaintiffs' counsel argued that Plaintiffs are challenging the structure of NMIC and the treatment of Victoria.  Defense counsel responded that the CDI examined the exact issue of separateness, using the eight factors under Cal. Ins. Code § 1861.16(c)(1) to determine Super Group status, and determined (for a second time) that NMIC and Victoria were entitled to the Super Group Exemption.  Defense counsel asserts that Plaintiffs' argument boils down to the following: But for the Super Group Exemption, plaintiff class members should have been offered the lower Victoria Good Driver rate.  As such, Defendants argue that this is a direct attack on an approved rate pursuant to the Super Group Exemption.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

---

2012) ("We may take judicial notice of undisputed matters of public record."); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies.") (citation omitted); *Perryman v. Litton Loan Serv., LP*, No. 3:14-cv-02261-JST, 2014 WL 4954674, at *3 (N.D. Cal. Oct. 1, 2014) ("[P]remium rate filings made to and approved by the California Department of Insurance … are public records noticeable pursuant to Rule 201(b) of the Federal Rules of Evidence."); *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-cv-03646-JSC, 2013 WL 2299601, at *1 (N.D. Cal. May 24, 2013) ("Judicial notice is also appropriate for materials incorporated into the complaint.") (citation and internal quotation omitted).  Therefore, the Court takes judicial notice of them.

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The court must construe the complaint
in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw
all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d
893, 896 (9th Cir. 2002).  The court is not required to accept as true legal conclusions couched as
factual allegations.  *See Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  *Id.*

        In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations
contained in the pleadings, exhibits attached to the complaint, and matters properly subject to
judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Marder v.
Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on
which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the
document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy
attached to the 12(b)(6) motion").

## III.  <u>Discussion</u>

        As in *Rocha I*, Plaintiffs' case is predicated on the assertion that Defendants are not entitled
to the Super Group Exemption set forth in Cal. Ins. Code § 1861.16(c).  Defendants' Renewed
MTD is largely based on the same arguments as the original Motion to Dismiss: (1) Defendants
argue that the Court lacks jurisdiction to hear the case because it falls within the CDI's jurisdiction,
(2) Plaintiffs fail to allege a violation of Cal. Ins. Code § 1861 because only sales agents have a
duty to offer the Victoria policy, not insurers, and (3) Plaintiffs fail to state any other claim.  *See*
Renewed MTD at 20-30.  Plaintiffs argue that because Defendants "misrepresented their eligibility
for the Super Group Exemption and failed to comply with the exemption requirements, 1860.1 is
inapplicable," and that this Court has concurrent jurisdiction with the Insurance Commissioner.
*See* Opp. at 4.

        As the Court previously concluded in *Rocha I*, Defendants' exclusive jurisdiction argument
is grounded in several provisions of the California Insurance Code.  First, the plain language of
Cal. Ins. Code § 861.16(c) indicates that the Commissioner, not the courts, makes the
determination as to whether the insurers are complying with the Super Group Exemption criteria.
*See* Cal. Ins. Code § 1861.16(c) ("[I]nsurers having common ownership and operating in
California under common control are not required to sell good driver discount policies issued by

11

other insurers within the common ownership group if the commissioner determines that the insurers satisfy each of the following [eight] conditions . . . ."). In drafting the statute this way, "the legislature recognized the [CDI]'s expertise and fluency in the specialized areas that must be analyzed in deciding entitlement to Super Group status. The Super Group analysis calls for a deep dive into specialized information, such as 'determining, filing, and applying base rates, factors, class plans, and underwriting rules,' and 'developing loss or expense statistics or other data used in ratemaking, or in the preparation of rating systems or rate filings.'" *King v. Nat'l Gen. Ins. Co.*, No. 4:15-cv-00313-DMR, 2017 WL 588291, at *4 (N.D. Cal. Feb. 14, 2017) ("*King II*") (quoting Cal. Ins. Code § 1861.16(c)(1)(B), (E)). As the *King II* court explained, the "judicial decisionmaking in the instant case will be greatly enhanced by [CDI]'s administrative expertise and decisionmaking on the Super Group exemption question. Moreover, deferring the Super Group determination to the [CDI] will also avoid the risk of inconsistent application of a regulatory statute that expressly vests decisionmaking authority in the [CDI], rather than the courts." *Id.*

Next, § 1860.1 provides: "No act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance." Similarly, § 1860.2 states: "The administration and enforcement of this chapter shall be governed solely by the provisions of this chapter." However, § 1861.03 seemingly contradicts § 1860.1 in stating that "[t]he business of insurance shall be subject to the laws of California applicable to any other business."

Nevertheless, as this Court previously noted, other federal courts and the California Court of Appeals have "harmonized" this apparent contradiction by "narrowly construing the Section 1860.1 immunity … [such that] challenges to the reasonableness of an approved rate fall within the exclusive ambit of the chapter and are exempt from the requirements of other laws." *See Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1082 (N.D. Cal. 2012); *MacKay v. Superior Ct.*, 188 Cal. App. 4th 1427, 1443 (2010) ("In short, we conclude that (1) while Insurance Code section 1861.03 subjects the entirety of the business of insurance to the laws governing business generally; and (2) Insurance Code sections 1860.2 and 1861.03 taken together provide that the statutes in the ratemaking chapter of the Insurance Code may be enforced by the laws governing business generally (if applicable); nonetheless, (3) Insurance Code section 1860.1 exempts from other California laws acts done and actions taken pursuant to the ratemaking authority conferred

by the ratemaking chapter, *including the charging of a preapproved rate*.") (emphasis in original);
*King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 935 (N.D. Cal. 2015) ("*King I*"); *Donabedian v.
Mercury Ins. Co.*, 116 Cal. App. 4th 968 (2004); *Walker v. Allstate Indemn. Co.*, 77 Cal. App. 4th
750, 756 (2000).   In other words, "while Section 1860.1 precludes litigation against acts done
pursuant to the [CDI's] ratemaking authority, 'it does not extend to insurer conduct not taken
pursuant to that authority.'" *King I*, 129 F. Supp. 3d at 935 (quoting *MacKay*, 188 Cal. App. 4th
at 1449)  Parties wishing to challenge a CDI-approved rate must do so through the administrative
process:

> After a rate has been approved by the commissioner, it is still
> possible for an insured to challenge it.  The procedure for such a
> challenge is set out in article 7 of chapter 9 of part 2 of division 1 of
> the Insurance Code ("Hearings, Procedure and Judicial Review").
> "Any person aggrieved by any rate charged, rating plan, rating
> system, or underwriting rule followed or adopted by an insurer . . .
> may file a written complaint with the commissioner requesting that
> the commissioner review the manner in which the rate, plan, system,
> or rule has been applied with respect to the insurance afforded to
> that person.  In addition, the aggrieved person may file a written
> request for a public hearing before the commissioner, specifying the
> grounds relied upon."  (Ins. Code, § 1858, subd. (a).)  If, after a
> hearing, the commissioner finds a violation, the commissioner shall
> order that the insurer discontinue the violating practice, and may
> also order necessary and proper corrective action.  (Ins. Code, §
> 1858.3, subd. (a).)  "Any finding, determination, rule, ruling or order
> made by the commissioner under this chapter shall be subject to
> review by the courts of the State and proceedings on review shall be
> in accordance with the provisions of the Code of Civil Procedure."
> (Ins. Code, § 1858.6.).

*MacKay*, 188 Cal. App. 4th at 1441.  "Judicial review of the commissioner's decision is available
by timely petition for writ of administrative mandamus."  *Walker*, 77 Cal. App. 4th at 753.

As such, whether this Court may exercise jurisdiction over this dispute therefore depends
on whether the denial or approval of the Super Group Exemption falls within the agency's
exclusive jurisdiction.  Defendants contend that the determination of Super Group eligibility is a
ratemaking determination and therefore Plaintiffs are seeking to challenge the agency's ratemaking
authority.  According to Defendants, the CDI's order denying Plaintiffs' "Primary Jurisdiction
Referral and Request for Hearing" was, yet again, a direct approval of Defendants' eligibility for
the Super Group rates, and this case falls within the Insurance Commissioner's exclusive
jurisdiction.  Reply at 9.  Indeed, Defendants argue that the CDI answered the specific question

the Court referred to it—"whether Defendants were entitled to the Super Group Exemption during
the Class Period." *Id.*; *see also* RJN, Ex. 1, Docket No. 82-1 at 6 ("[T]he Rochas have not
established probable cause that Victoria operated in a manner contrary to the Super Group
Exemption criteria during the time it wrote private passenger automobile business in California.").
In contrast, Plaintiffs argue that this case involves Defendants misrepresenting their eligibility for
the Super Group Exemption and therefore falls outside the CDI's exclusive jurisdiction. *See* Opp.
at 4.

      In considering Plaintiffs' "Primary Jurisdiction Referral and Request for Hearing," the CDI
(once again) explicitly determined that there was no probable cause to find that Defendants were
not actually eligible for the Super Group exception; this is tantamount to a direct finding that
Defendants were eligible to charge their own Good Driver Discount rates, rather than being
required to offer Plaintiffs the lowest Good Driver Discount rate offered by any of the members of
the Control Group. The CDI stated: "For more than a decade, Victoria has repeatedly filed private
passenger automobile rate applications that included evidence supporting its compliance with the
Super Group Exemption criteria. The Commissioner reviewed those rate applications and, in each
case, determined that Victoria satisfied the Super Group Exemption. Victoria withdrew from the
California private passenger automobile insurance market effective November 21, 2018." RJN,
Ex. 1, Docket No. 82-1 at 4-5. The CDI found "the Rochas' newly submitted evidence d[id] not
supply probable cause for revisiting the Department's prior determination that Nationwide and
Victoria were entitled to the Super Group Exemption." *Id.* at 6. This led the CDI to conclude:

> The Department stands ready to assist if the Court wishes to certify
> future questions based upon specific evidence developed to address
> the claims in *Rocha II*. At present, however, and based on the
> allegations, evidence, and argument presented by both parties to the
> Commissioner in the course of this prehearing investigation, the
> Commissioner finds the Rochas have not established probable cause
> that Victoria operated in a manner contrary to the Super Group
> Exemption criteria during the time it wrote private passenger
> automobile business in California. Further, the Commissioners'
> own investigation has not found probable cause that the Rochas'
> allegations have merit. For the above reasons, the Commissioner
> declines to revisit his previous determinations that NMIC and
> Victoria satisfied each of the Super Group Exemption conditions set
> forth in [Cal. Ins. Code] section 1861.16(c).

*Id.*

      To the Court, it appears that Plaintiffs are attempting to bring a challenge similar to the one

in *King I*.  In *King I*, the plaintiffs alleged that: (1) the agents/representatives of the defendant insurers—that were commonly owned or operated under common management—failed to offer the plaintiffs the lowest rates for that coverage (*i.e.* the Good Driver Discount rate) from an insurer within that ownership, management, or control group; and (2) the defendants did not meet the criteria for any exemption from the rule that insurers within a common control group must offer the lowest Good Driver rate of any insurer within that group.  129 F. Supp. 3d at 929-30.  The court in *King I* held, *inter alia*, that, although challenges to the approved rates are within the exclusive jurisdiction of the CDI (Cal. Ins. Code § 1860.1), that exclusive jurisdiction does not cover insurer conduct not taken pursuant to that authority or to claims that do not actually challenge a rate approved by the CDI or the CDI's ratemaking authority.  *Id.* at 936.  The court in *King I* went on to find that: (1) the plaintiffs were challenging the defendants' allegedly wrongful application of the approved rates, *i.e.*, the conduct and practices that result in the plaintiffs being offered a policy with a higher CDI-approved rate when they should have been offered a policy with a lower CDI-approved rate; and (2) "neither Section 1860.1 nor the filed rate doctrine precludes [the] [p]laintiffs from litigating their claims in this court."  *Id.* at 936.

The present case, however, differs from *King I*, which is nevertheless not binding on this Court, because Plaintiffs here are challenging the Insurance Commissioner's determination that Defendants satisfied the criteria for the Super Group Exemption.  *See e.g.,* Compl. ¶ 51 ("However, the Defendants, during the Class Period did not comply with eight criteria enumerated in §[ ]1861.16(c)(1)[A-H], and therefore, Defendants were not entitled to the Super Group Exemption."); ¶ 55 ("Defendants did not satisfy all of the eight conditions enumerated in Cal. Ins. Code § 1861.16(c)(1)[A-H]. Therefore, Defendants did not qualify for the Super Group Exemption."); ¶ 59 ("However, the Defendants failed to comply with several of the Separation Requirements enumerated in §[ ]1861.16(c)(1).").  Because Plaintiffs contend that Defendants were not entitled to the Super Group Exemption, they argue that "Defendants' agents and representatives were required to Cross Company offer and the Defendants were required to sell a PPA from [Victoria] as it had the lowest Good Driver rate from the Defendant companies that are under the common ownership and control of NMIC and the Control Group."  *Id.* ¶ 72; *see also id.* ¶ 74 ("At all times, during the Class Period, the Defendants[], their Control Group (Nationwide Corp. Group), and owner (NMIC) were not entitled to a Super Group Exemption . . . . Therefore, the Plaintiffs and the members of the Class expected that Defendants, through their agents and

representatives, would offer and Defendants would sell, policies with the lowest available Good Driver rate 'for that coverage' as defined in Cal. Ins. Code §[ ]660.").  In other words, but for Defendants' Super Group Exemption status, Plaintiffs allege that they would have been offered the lower Victoria Good Driver rate, and Plaintiffs would have accepted said rate.  *See id.* ¶¶ 72-73.

While Plaintiffs cite to a string of cases for the proposition that "more recent cases provide valuable guidance regarding and undermine Defendants' assertions that the CDI's finding of no probable cause deprives the Court of jurisdiction," the Court would find that those cases are distinguishable from the facts presently before this Court.  First, Plaintiffs cite to several cases challenging the adequacy of insurance refunds provided in light of the COVID-19 pandemic.  *See, e.g., Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 837 (N.D. Cal. 2022); *Torrez v. Infinity Ins. Co.*, No. 2:22-cv-05171-SVW-(JCx), 2022 WL 6819848, at *4 (C.D. Cal. Oct. 11, 2022); *Rejoice! Coffee Co., LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 3:20-cv-06789-EMC, 2021 WL 5879118, at *6 (N.D. Cal. Dec. 9, 2021).  These cases generally stand for the proposition that a challenge to the *application of* approved insurance rates, rather than the rates themselves, do not fall within the CDI's exclusive jurisdiction.  *See Day*, 580 F. Supp. 3d at 837 ("Plaintiff's … claims challenge GEICO's application of its approved rate plan during the COVID-19 pandemic"); *Torrez*, 2022 WL 6819848, at *2-4 (agreeing that plaintiff's UCL claim did not fall under the exclusive jurisdiction of the Insurance Commissioner but using the court's discretion to abstain from reaching the merits of the case); *Rejoice!*, 2021 WL 5879118, at *4-6 (holding that Plaintiff is not challenging "approved rates and rating factors," but instead "the application of approved rates" "in the context of the COVID-19 pandemic").

Defendants argue that Plaintiffs' "core allegation that they were 'overcharged for their premiums' because [D]efendants were not entitled to Super Group status is a direct attack on the [D]efendants charging the approved rate," as opposed to a challenge to the application of an approved rate.  Reply at 8.  Indeed, the only reason Defendants failed to charge the lower Victoria rate is because they were operating pursuant to the Super Group Exception.  Because Plaintiffs contend that Defendants were not entitled to the Super Group Exemption, *see* Compl. ¶ 51, Defendants have a strong argument that Plaintiffs are in fact challenging the agency's ratemaking authority.  Accordingly, Plaintiffs' citations to *Blain v. Liberty Mutual Fire Insurance Co.*, No. 3:22-cv-00970-AJB-DEB, 2023 WL 2436003 (S.D. Cal. Mar. 9, 2023) and *Carroll v. Progressive*

*Casualty Insurance Co.*, No. 2:21-cv-09217-FMO-(RAOx), 2023 WL 3526137 (C.D. Cal. Mar. 6, 2023), are also unhelpful because both cases involved challenges to the application of approved rates, not to the rates themselves.  *See Blain*, 2023 WL 2436003, at \*5 (finding that "Plaintiff's challenge is to the application of approved rates, not to the rates themselves, and therefore does not fall within the Insurance Commissioner's exclusive jurisdiction); *Carroll*, 2023 WL 3526137, at \*3 ("plaintiffs do not challenge an approved rate or rating factors, … rather, they challenge Progressive's 'unfair business practices in the application of its rates, and the insufficiency of its premium credits, during the [] circumstances surrounding the COVID-19 pandemic").[4]  And *Travelers Indemnity Co. v. Lara*, 84 Cal. App. 5th 1119 (2022), is clearly distinguishable as it did not discuss the CDI's exclusive jurisdiction under Section 1861.16(c)(1).  Rather, it involved the Insurance Commissioner's decision relating to workers' compensation policies under Section 11737(f).  *See id.* at 1130.

At the hearing, Plaintiffs' counsel emphasized that this action is not challenging the agency's ratemaking authority as Plaintiffs are not seeking to change the rates themselves.  Instead, counsel argued that Plaintiffs are challenging the structure of NMIC and the treatment of Victoria.  Put another way, Plaintiffs contend that Defendants are improperly utilizing the Super Group Exemption to avoid selling the lowest Good Driver rate available among all Defendant insurers.  Even if the Court concluded that Plaintiffs' lawsuit is not a challenge to the agency's ratemaking authority per se, Plaintiffs are still contesting Defendants' Super Group Exemption status, a determination that is to be made *solely* by the Commissioner.  *See* Cal. Ins. Code § 1861.16(c).  Thus, the following questions arise: (1) where are challenges to the CDI's decision regarding Super Group Exemption status supposed to go; and (2) whether this matter should be viewed as a dispute arising from the CDI's underlying decision rather than a lawsuit against the defendant insurers for improper conduct.

Addressing the second question first, the Court would find that the present action does not implicate the latter situation as there are no allegations of improper conduct on the part of Defendants.  While Plaintiffs allege that Defendants "continued to write PPA policies in California

---

[4] For the same reasons, Plaintiffs' citation to *Coleman v. United Services Automobile Ass'n*, No. 3:21-cv-00217-CAB-LL, 2021 WL 2577158 (S.D. Cal. June 22, 2021), is unhelpful.  There, the court concluded that "Plaintiffs do not challenge the validity or reasonableness of Defendants' rates, nor do they challenge the DOI's rulemaking authority in approving those rates."  *Id.* at \*4.  Instead, they challenged the application of previously approved rates, which they claim was applied in a discriminatory manner.  *Id.*

under a *falsely* claimed Super Group Exemption [emphasis added]," *see* Compl. ¶¶ 134-35, the CDI's finding (*i.e.* that Defendants qualified for the Super Group Exemption during the relevant 2009-2019 time period) nullifies any characterization of the Defendants' conduct as being either false or improper.  Indeed, how could there be a finding of illegal conduct when Defendants were merely acting pursuant to the CDI's determination that they were entitled to the Super Group Exemption?  A determination that the CDI has confirmed not once, but twice now.

The Court, therefore, is inclined to find that Plaintiffs' challenge falls within the former situation (*i.e.* a dispute stemming from the CDI's underlying decision).  And, as noted above, the plain language of Cal. Ins. Code § 1861.16(c) indicates that it is the *Commissioner*, not the courts, who determines wehether the insurers are complying with the Super Group Exemption criteria.  *See* Cal. Ins. Code § 1861.16(c) ("[I]nsurers having common ownership and operating in California under common control are not required to sell good driver discount policies issued by other insurers within the common ownership group *if the commissioner* determines that the insurers satisfy each of the following conditions … [Emphasis added].").  Accordingly, what is the procedural avenue for litigation contesting the Commissioner's Super Group Exemption determination?  Cal. Ins. Code § 1858.6 states that: "Any finding, determination, rule, ruling or order made by the commissioner under this chapter shall be subject to review by the courts of the State and proceedings on review shall be in accordance with the provisions of the Code of Civil Procedure."  That statute also provides that "[n]otwithstanding any other provision of law to the contrary, a petition for review" is the avenue for that litigation.  Cal. Ins. Code § 1858.6.  Petitions for review are lawsuits seeking examination of agency action based upon an administrative record.  *See generally Econ. Empowerment Found. v. Quackenbush*, 65 Cal. App. 4th 1397, 1402 (1998).

Even if Plaintiffs' action may not be a challenge to the agency's ratemaking authority *per se*, it is a challenge that falls within the exclusive jurisdiction of the CDI.  Again, determining whether the Super Group exemption under Cal. Ins. Code § 1861.16(c)(1) applies to Defendants is a conclusion made by the Commissioner, not the courts.  Although Plaintiffs may not seek to outright change the rates themselves, they are contesting the rates by contesting Defendants' Super Group Exemption status.  Such a challenge should be resolved solely by the Commissioner and any review should go by way of a writ of administrative mandamus.

In the end, the CDI considered Plaintiffs' "newly submitted evidence" and determined, yet

again, that Defendants appropriately applied the Super Group exception to the Control Group rules when charging Good Driver Discount rates. On its face, the CDI's order, for a second time, confirms its approval of Defendants' Good Driver Discount rates pursuant to the Super Group Exemption, and § 1860.1 immunity applies. *See, e.g.*, *Walker*, 77 Cal. App. 4th at 756 ("[U]nder the statutory scheme … the charging of an approved rate cannot be deemed 'illegal' or 'unfair' for purposes of the Unfair Business Practices Act or, indeed, tortious.").

Plaintiffs also argue that the CDI "found [their] evidence gave [their] allegations credibility." Opp. at 8. However, Plaintiffs fail to identify, and the Court cannot locate, anything in the CDI's order supporting their contention that their new evidence "gave [their] allegations credibility." *Id.* Rather, the CDI reached the opposite conclusion. Indeed, the CDI found that "the Rochas' newly submitted evidence d[id] not supply probable cause for revisiting the Department's prior determination that Nationwide and Victoria were entitled to the Super Group Exemption." RJN, Ex. 1, Docket No. 82-1 at 6. And while the CDI did not "doubt the authenticity" of Plaintiffs' "newly submitted evidence," it did "not provide enough specificity regarding whether Nationwide and Victoria failed to comply with the factors enumerated in 1861.16(c)(1)(A)-(H)." *Id.* Accordingly, the CDI again concluded that "the Commissioner['s] own investigation has not found probable cause that the Rochas' allegations have merit." *Id.*; *see also id.* at 3 ("Having evaluated the allegations, evidence, and argument presented during the prehearing investigation, the Commissioner finds no probable cause for the Rochas' allegations.").

Ultimately, the Court sees no reason to depart from its tentative order in *Rocha I*, provisionally indicating that it was "inclined to agree with Defendants that the CDI's determination dictates the resolution of this case," and that § 1860.1 immunity applies. RJN, Ex. 8-A, Docket No. 82-8 at 9.[5] In the present action, Plaintiffs presented their new evidence to the CDI, which (for a second time) "decline[d] to revisit [the Commissioner's] previous determinations that NMIC and Victoria satisfied each of the Super Group Exemption conditions set forth in section 1861.16(c)." *Id.*, Ex. 1, Docket No. 82-1 at 6. Moreover, as the Court previously concluded in ruling on Defendants' Interlocutory Appeal Motion:

> In the attenuated series of events in which the CDI makes a
> determination in favor of Plaintiffs, the Plaintiffs' case returns to

---

[5] As noted above, on the day of the hearing, May 18, 2020, Plaintiffs filed a notice of voluntary dismissal pursuant to Federal Rules of Civil Procedure 41(a). *See Rocha I*, Docket No. 73.

> this Court, *and* the case ultimately terminates in favor of Plaintiffs, Defendants can raise their arguments on appeal at that point. But if Plaintiffs *lose at any point* in that series of events, the case will be *over …*

*See* Docket No. 58 at 10 (emphasis added). Likewise, as the Court advised at the hearing on Defendants' Interlocutory Appeal Motion on June 23, 2022:

> THE COURT: Well, at this point in time, it's being entertained by the CDI, and the CDI is going to indicate what they plan to do. And, you know, so let's put it this way: If the CDI says this is -- you know, this latest filing is a bunch of hokum, *that is pretty much going to be the end of this case*.

RJN, Ex. 2, Docket No. 82-2 at 7:1-5 (emphasis added).

Plaintiffs brought their claim to the CDI, and the CDI, once again, denied the claim after determining that Plaintiffs' new evidence did "not supply probable cause for revisiting the Department's prior determination that Nationwide and Victoria were entitled to the Super Group Exemption." RJN, Ex. 1, Docket No. 82-1 at 6. In doing so, the CDI, for a second time, approved the Good Driver Discount rates Defendants charged under the Super Group Exemption. As discussed previously, the CDI has exclusive authority to determine whether or not a group of insurers falls within the Super Group Exemption. *See* Cal. Ins. Code § 1861.16(c). The Commissioner made that determination, which has been confirmed twice now. If Plaintiffs are unsatisfied with the Commissioner's decision, then they should seek review by way of administrative mandamus.

**IV.   Conclusion**

Based on the foregoing discussion, the Court **GRANTS** the Motion. Because the defect in Plaintiffs' claim cannot be cured by amending the Complaint seeking further litigation in this forum, the Court grants dismissal without leave to amend.